[L. A. No. 6526.   In Bank.—October 16, 1922.]

## ADDIE LILLIAN PREWITT, Respondent, v. SUNNY-MEAD ORCHARD COMPANY (a Corporation) et al., Appellants.

[1] CORPORATIONS — PURCHASE OF STOCK — FRAUD — DISCOVERY —EVIDENCE.—In this action to have rescinded a contract for the purchase of corporation stock upon the ground of false representations made by its president and secretary as to the amount that had been paid on account of the price of land which it was purchasing, which fraud the plaintiff alleged that she did not discover until more than five years after the purchase, the plaintiff cannot be said, in view of the evidence, to have been put upon inquiry as to the corporation's interest in the land by the facts that no dividends had been paid, that four assessments had been levied and that discussions had been had with the stockholders with reference to a proposed plan of dividing the land among them for the purpose of saving it from being taken upon a mortgage foreclosure.

[2] ID.—FACTS DISCOVERABLE FROM EXAMINATION OF BOOKS—CONSTRUCTIVE KNOWLEDGE.—Where a purchaser of corporation stock had no actual knowledge of circumstances which would lead her to examine the books of the corporation, or of the matters which appeared therein, and as there was no duty imposed upon her by law to examine them, she cannot be charged with constructive knowledge of the facts which an examination might have led her to discover.

[3] CONTRACT—RESCISSION—JUDGMENT—WHEN UNNECESSARY.—Where in an action to rescind a contract for the purchase of corporation stock upon the ground of fraud, it was found that plaintiff served notice of rescission and the other findings showed that her repudiation of the contract was fully justified, it was not necessary that the court order the contract rescinded.

APPEAL from a judgment of the Superior Court of Los Angeles County. Russ Avery, Judge. Affirmed.

The facts are stated in the opinion of the court.

Evans & Pearce and W. E. Evans for Appellants.

Fred N. Arnoldy for Respondent.

1. Rescission for fraud or misrepresentation in procuring subscription to stock, note, 33 L. R. A. 721.

LAWLOR, J.—This action was brought by plaintiff, Addie Lillian Prewitt, to have rescinded a contract which she had entered into with defendant Sunnymead Orchard Company for the purchase of one thousand shares of its stock and to recover damages, upon the ground that the purchase was induced by fraudulent representations made by the defendant company through defendants N. A. Ross and A. G. Stearns, who were respectively its president and secretary, plaintiff having previously served notice of rescission. The purchase was made on May 7, 1913, plaintiff taking the stock at the par value of one dollar per share. Part of the purchase price was paid in cash and for the balance notes were given, which plaintiff afterward paid. The business of the company was the improvement and subdivision of farm lands and the alleged fraud consisted in falsely representing that it had actually paid more than eighty-five thousand dollars on account of the purchase of its lands, whereas in fact it had paid only about eighteen thousand dollars, and in further representing that the individual defendants thought so well of the stock that they had personally invested fifty thousand dollars therein in money, whereas they had in fact invested nothing.

The notice of rescission was not served until October 1, 1918, more than five years after the purchase of the stock, and the complaint was not filed until January 31, 1919. Plaintiff in her complaint alleged that she had no knowledge, notice or suspicion of the facts constituting the fraud complained of prior to September 15, 1918; that the circumstances under which she discovered the falsity of the representations were that on September 15, 1918, defendant N. A. Ross caused a special meeting of the stockholders to be held, at which he endeavored to force the consent of the stockholders to the granting of an option on the property of the company for $2,500; that in the discussion which thereupon ensued she was informed and learned for the first time that about five hundred acres of land, which constituted a large part of the company's tract, had, on December 1, 1915, been deeded back by the company to the person from whom it had been purchased, for no other consideration than a release from its obligation to pay the unpaid balance due on it; that plaintiff expressed surprise that the land should be deeded back without consideration after more than

one-half of the purchase price had been paid; that thereupon plaintiff learned and discovered for the first time that the company had not invested the sum of $85,207.50 in money in the land and that after diligent investigation she learned that not over $18,207.50 had been so invested, whereupon she gave notice of her rescission. It was also alleged that the defendants until September 15, 1918, concealed these facts from plaintiff and contrived to and did keep her in ignorance of them.

The defendants denied all the allegations of fraud and in addition pleaded the statute of limitations (Code Civ. Proc., sec. 338), and further alleged that the action was barred by the plaintiff's laches under section 1691 of the Civil Code.

The trial court made detailed findings in favor of the plaintiff upon all the issues raised by the pleadings and pursuant thereto judgment was rendered in her favor against defendants Sunnymead Orchard Company and N. A. Ross, defendant A. G. Stearns not having been served with summons and not having appeared. From that judgment defendants Sunnymead Orchard Company and N. A. Ross take this appeal.

[1] Appellants concede that there was at least some evidence to support the findings in favor of respondent upon all of the allegations necessary to constitute a cause of action for fraud, their single contention being "that this action was barred by the statute and by laches on the part of respondent," predicating their contention upon the provisions of the two code sections already cited. It is not made clear whether their claim is that the findings do not support the judgment or that the evidence does not support the findings. They express their contention in five propositions: First, that respondent at the time she purchased the stock expected an income therefrom in the way of dividends to begin soon after investing, and that therefore when such dividends were not forthcoming she was put upon notice which should have caused her to investigate the reasons thereof; second, that instead of dividends being forthcoming, four assessments were thereafter levied, one in January, one in June and one in December, 1916, and one in May, 1918, and that these assessments should have given her further notice that the condition of the company was pre-

carious; third, that she should have had notice of the condition of the company by reason of discussions which were had with stockholders, of which she was cognizant, with reference to a proposed plan of dividing the land of the company among the stockholders for the purpose of saving it from being taken upon a mortgage foreclosure; fourth, that she should have been put upon inquiry, as a stockholder interested in the affairs of the company, by the fact that the books of the company disclosed that the land was deeded back to the original owners for the purpose of satisfying the mortgage more than three years before she filed her action for rescission; fifth, that she should be held, as a stockholder, to know from the books of the company that ten thousand shares of stock, owned by various stockholders, had been sold at five cents per share to satisfy delinquent assessments, and that she should have been put upon inquiry by this fact.

Without disputing the soundness of the findings concerning the discovery of the fraud, appellants claim these matters should have caused respondent to investigate the affairs of the company long before she commenced her action, and that had she pursued such an inquiry she would have learned long before September 15, 1918, all she was found to have learned on that date.

The court found that "the Defendants at all the times mentioned and until the said 23rd day of September, 1918, concealed from the Plaintiff the fact that the Defendant Corporation on or about December 1st, 1915, deeded back approximately 500 acres of said tract as in Paragraph VII of the Complaint is alleged, and contrived to and did keep the Plaintiff in ignorance of the said fact until the said 23rd day of September, 1918, for the purpose and with the intent of concealing from the Plaintiff, and preventing Plaintiff from discovering, her said cause of action and the falsity of the representations and statements so made to her by the Defendants as aforesaid; that Defendants caused a number of the stockholders of Defendant Corporation to meet on or about November 1st, 1915, for the purpose of assenting to the said conveyance; and that Defendants contrived to and did keep the Plaintiff in ignorance thereof and failed to give the Plaintiff any notice thereof, and contrived to and did conceal the said fact from the Plaintiff,

and that Plaintiff did not have or receive, and had not had or received, any notice, knowledge or suspicion thereof until the said 23rd day of September, 1918; that the said sum of $180.00 on account of assessments levied and declared by Defendant Corporation as aforesaid was paid by Plaintiff to the Defendants . . . and that no part of said sums have been repaid to Plaintiff; and that during the said period and at the times of the payment of said assessments Plaintiff had a number of conversations with the Defendants and that the Defendants in such conversations represented and stated that the purpose of said assessments was to raise funds to take care of interest installments accruing on the unpaid purchase price of said tract and to defray expenses of the nursery operated by Defendant Corporation in connection therewith, and further that by reason of the depressing effect of the World War upon the real estate market Defendants had been unable to make sales and to carry out their plans for subdividing, improving and selling the said tract and that therefore no proceeds or profits had theretofore accrued therefrom and said assessments had become necessary; that the Plaintiff, believing that the World War and the conditions resulting therefrom had delayed and interfered with the said plans of Defendants and that by reason thereof no proceeds or profits had as yet accrued, and that therefore said assessments had become necessary, did not make any investigation as to the financial condition or affairs of Defendant Corporation prior to the 23rd day of September, 1918; that Plaintiff is a woman without any experience in or knowledge of the affairs of corporations or of the rights of stockholders, and without any experience in business enterprises or investments, and that Plaintiff at all times until the 23rd day of September, 1918, relied upon the said representations and statements so made to her by Defendants as aforesaid and believed them to be true, and had no reason to believe or to suppose, or to suspect, the same to be false or untrue until the said 23rd day of September, 1918, and that at no time prior thereto did the Plaintiff have any notice, knowledge, information, or suspicion, as to the falsity of the said representations and statements, *nor did any facts or circumstances come to the notice, knowledge or attention of the Plaintiff which caused her, or which would have caused any person of ordinary*

*prudence, to believe or to suspect that the said representations or statements were false or untrue in any respect, until the said 23rd day of September, 1918.''* Appellants' contention apparently is that in the particulars mentioned the evidence does not support the portion of this finding we have italicized, and that facts and circumstances did come to respondent's attention which should have put her upon inquiry as to the truth of the representations and statements before September, 1918. This position is untenable.

With reference to the first point, that there was no income from respondent's investment, appellant Ross himself testified he ''explained to her that our plan was to develop the land and sell it planted, and it would be some time before we could hope to get any quick returns out of it.'' V. M. Tresslar, a witness for appellants, stated that the condition of the real estate market between 1913 and 1918 was very poor; that as a result of a freeze in 1912 and 1913, followed by the breaking out of war, there was practically no sale for land of the character of that which the company owned. Respondent testified she went to appellant Ross' office several times and ''I asked Mr. Ross how things were progressing and he was always very optimistic; and always gave me a good report; that everything was all right.'' Respondent also testified that ''I frequently asked him when I was in there, if everything was prosperous, and he always replied that it was. Q. Didn't you go further than that and ask him whether the company was not getting into a very bad condition? A. Oh, no, sir; I never did. Q. Did you ever feel the company was getting into a bad condition until you had this conversation with Mr. Ross in September, 1918? A. No, sir. . . . Q. You had no suspicion that the company was failing? A. No, sir; none whatever. Mr. Stearns had told me that Mr. Ross was very deliberate in his transactions, and he had always made a success, and I had no reason to doubt the statement.'' Silas Prewitt, respondent's husband, testified that ''he [Ross] always told me that things looked all right; and of course he mentioned the fact that there was no land being sold, and that there had been a depression in real estate; and spoke of the different conditions; but he says 'We will come out all right, because we have got plenty of time on this proposition; and I am having prospective customers.' And sev-

eral times he spoke that he thought he had deals in view whereby he would dispose of some or all of the land.''

Touching the second point, concerning the assessments, respondent testified she knew nothing about the corporation business, and had not considered the matter of paying assessments; that she paid the assessments; that she paid them to appellant Ross, who always told her everything was prosperous. Appellant Ross stated that respondent said ''she was disappointed that we had to have an assessment; that she didn't understand that we was going to have assessments. I told her we were all disappointed—I was, I was sure, because it hit me pretty heavy, and we hoped to get through without it; but under the conditions it was impossible to do it and we had to take care of our interest and other obligations, or lose out, that was all''; that ''I explained to her each time that the necessity of the assessments was that we were in bad luck and couldn't make sales, and we had to dig up money to keep our interest paid up, to keep from selling our land; but we were hoping to pull through.''

On the third point, regarding the matter of dividing up the land, respondent testified that appellant Ross had said the stockholders could always have the land; that it could be divided if anyone wanted it; that they did not discuss about dividing it, but that he said it could be divided—that if anyone wanted their land they could have it; and that at the time of these conversations she still believed the land was over half paid for.

It cannot be said, in view of this evidence, that the facts mentioned in appellant's first three points were sufficient to put respondent upon inquiry as to the company's interest in the land, which was the subject of the fraudulent representations. According to her testimony she knew nothing about the company's business and relied on Ross' statements as to its financial condition. He, as president of the company, told her there would be no immediate profits, that the assessments were to meet interest payments and make improvements, and that as a protection the stockholders could take portions of the company's land in exchange for their stock if they wished to do so, notwithstanding he knew that only $18,000 instead of $85,000 had been paid on a

total purchase price of $123,000 for the land. In the face of the findings we cannot say there is anything in this evidence which would lead respondent to suspect that the company owned but a small equity in its lands.

[2] With reference to appellant's last two points it remains to consider whether, assuming the matter shown by the company's books would have been sufficient to put respondent on inquiry, she must be deemed to have had knowledge of all such records solely because she was a stockholder. It was found, and is not disputed, that she did not know the land had been deeded back to the former owners, and she testified that she did not know any stock had been sold at five cents per share to satisfy delinquent assessments.

Section 19 of the Civil Code provides: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact." In *Tarke* v. *Bingham*, 123 Cal. 163, 166 [55 Pac. 759, 760], referring to this section, it was said: "But the converse of the proposition is equally true. Where no duty is imposed by law upon a person to make an inquiry, and where under the circumstances 'a prudent man' would not be put upon inquiry, the mere fact that means of knowledge are open to a plaintiff, and he has not availed himself of them, does not debar him from relief when thereafter he shall make actual discovery. The circumstances must be such that the inquiry becomes a duty, and the failure to make it a negligent omission." It is said in Cook on Corporations, 7th ed., sec. 731, p. 2620, referring specifically to actions by a stockholder against a corporation, that "It is not incumbent upon the stockholder to keep himself informed as to the various acts of the corporation. He is not chargeable with knowledge merely because he might have ascertained the facts by an examination of the corporate books."

Appellants rely on the case of *Lady Washington Consolidated Co.* v. *Wood*, 113 Cal. 482 [45 Pac. 809], wherein the plaintiff corporation sought to have set aside a release of a claim against an estate of which the defendant was executor, which release it was asserted was fraudulently executed by plaintiff's directors. In that case the court held: "They

[the stockholders] were chargeable with knowledge of all the acts of the directors which were spread upon the records of the corporation and of all the facts connected therewith that the inquiry suggested thereby would have disclosed. . . . 'The shareholders of a corporation cannot avoid responsibility for the unauthorized acts of their agent by abstaining from inquiry into the affairs of the company, or by absenting themselves from the company's meetings, and at the same time reap the benefit of their acts in case of success.' (*Underhill* v. *Santa Barbara etc. Co.*, 93 Cal. 312 [28 Pac. 1049].)''

That case is distinguishable from the one at bar upon two grounds. First, in that case it was "not averred that any of these facts, or of the transactions set forth as constituting the fraud, were done secretly, or were concealed from the plaintiff, or that any information which it sought was refused, or that, indeed, it sought to obtain any information upon the subject." In the case at bar all such matters were alleged in the complaint and specifically found by the court in favor of respondent. In *Lady Washington Consolidated Co.* v. *Wood, supra,* the action was brought by the company to recover property which it was alleged had been fraudulently disposed of by its agents, the directors of the company. The company and its stockholders in such a case clearly would be charged with knowledge of the acts of their agents, the directors, as they were recorded in the books. In this case respondent sued as an individual upon the rescission of the contract with the company; no rights of third persons or their dealings with the company are involved and no such question of estoppel is raised.

Inasmuch as respondent had no actual knowledge of circumstances which would lead her to examine the books, or of the matters which appeared therein, and as there was no duty imposed upon her by law to examine them, she cannot be charged with constructive knowledge of the facts which an examination of the books might have led her to discover.

[3] Appellants ask that the judgment be reversed or set aside because it grants respondent her relief without adjudging that the contract be rescinded. It is said in Benjamin on Sales, 5th ed., p. 461, that "It is not necessary that there should be a judgment of court in order to effect the

avoidance of a contract, when the deceived party repudiates it. The rescission is the legal consequence of his election to reject it, and takes date from the time at which he announces this election to the opposite party." In *American Type Founders' Co.* v. *Packer*, 130 Cal. 459 [62 Pac. 744], it was held that where one contracting party, after the other's failure to perform his obligations under the contract, served notice of rescission on the latter, "the rescission was complete and perfect, and the court should have so found."

In the case at bar, it was found that respondent served notice of rescission and the other findings show that her repudiation of the contract was fully justified. Under such circumstances it was not necessary that the court order it rescinded.

Judgment affirmed.

Lennon, J., Richards, J., *pro tem.*, Waste J., and Wilbur, acting C. J., concurred.