[Civ. No. 4279.  Second Appellate District, Division One.—October 4,
1923.]

## S. J. REID et al., Respondents, v. SPENCER ROBINSON et al., Appellants.

[1] STATUTE OF LIMITATIONS—PLEADING—DEMURRER.—Unless it clearly and affirmatively appears upon the face of the complaint that the action is barred by the statute of limitations, such objection to the complaint cannot be taken by demurrer.

[2] CORPORATIONS—SECRET PROFITS—FRAUD — EVIDENCE — STATUTE OF LIMITATIONS.—In an action by stockholders of a corporation to compel the defendants, who were stockholders and directors of said corporation, to account for secret profits made by one of them in a sale of real property owned by the corporation, where it appeared that the corporation was indebted to one of the defendants who was authorized to receive the moneys on account of said sale, no fraud was perpetrated upon the corporation until said director appropriated to his own use money over and above the indebtedness owing to him by the corporation, and an action on account of such fraud is within time where brought within three years from the time of the misappropriation of the money.

[3] ID.—EVIDENCE — FRAUD—KNOWLEDGE—FINDING—APPEAL.—In such action, the facts as found by the trial court to the effect that none of the plaintiffs had any notice or knowledge whatever, either actual or constructive, that more than a stated amount had been paid for the corporation's real property, or of any fact or circumstance calculated to arouse suspicion that there had been misrepresentation on the part of one of the defendant directors as to the price paid, are conclusive of the facts in favor of all the plaintiffs, with the possible exception of one plaintiff, who was a director of the corporation.

[4] ID.—WRONG TO CORPORATION—RIGHT OF STOCKHOLDERS—GENERAL RULE.—As a general rule, where a stockholder of a corporation seeks to maintain an action for a wrong done to the corporation, such stockholder occupies no better or different position with relation thereto than would the corporation itself suing in its own behalf.

[5] ID.—FRAUD BY DIRECTORS—STATUTE OF LIMITATIONS.—Where the control of a corporation lies in a board of directors the members of which are personally concerned in the fraud of which complaint

2.  Liability of directors to corporation or stockholder for secret profits, note, Ann. Cas. 1917A, 238.

is made and where it would follow that no action could nor would be instituted by the corporation for redress of its wrongs, an action by a stockholder of the corporation will not be barred by reason of the lapse of time provided by the statute.

[6] ID.—FRAUD — NOTICE—FINDING—EVIDENCE—APPEAL.—In such action, where the evidence relating to the question whether or not one of the plaintiffs, who was a director at the time of the transaction involving the sale of the corporation's property, had notice of sufficient facts as to have put him on inquiry concerning the fraud, was conflicting, the trial court's determination on the question was final.

[7] ID.—EXAMINATION OF CORPORATE BOOKS—DUTY OF STOCKHOLDERS. In such action, there was no duty or obligation incumbent upon either the plaintiff director or any of his coplaintiffs to examine the books or the minutes of the corporation either constantly or at intervals for the purpose of detecting fraudulent acts or transactions either as against the stockholders generally or as against themselves in particular.

[8] ID. — FINDINGS — JUDGMENT — EVIDENCE.—In such action, the evidence was sufficient to justify both the findings and judgment in favor of plaintiffs.

[9] ID.—ABSENCE OF GAIN — LIABILITY OF DIRECTOR — EVIDENCE.—In such action, the fact that one of the defendants who was a director and the president of the corporation did not personally profit financially by the illegal transaction of selling the corporation's property for a greater price than that represented does not free him from liability where he knew what was being done and, with such knowledge, assisted in carrying out some of the details of the transaction and thereafter concealed the facts from the plaintiffs, all in violation of his trust as an officer and director of the corporation.

[10] ID.—PARTICIPATION IN FRAUD—DEGREE OF—BENEFITS—LIABILITY OF PARTY.—Aside from the president's trusteeship requiring at his peril absolute fidelity to his trust, the law of torts is to the effect that every person concerned in a wrong to another which results in damage is liable therefor, irrespective of the degree in which he therein participates and entirely without reference to the benefits which he may receive on account thereof.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge. Affirmed.

The facts are stated in the opinion of the court.

Evans & Pearce, Carnahan & Clark and W. T. Helms for Appellants.

S. L. Carpenter and George L. Greer for Respondents.

HOUSER, J.—This action sounds in fraud. It is brought by certain persons who, during a portion of the time involved herein, were stockholders of a corporation. The purpose of the action is to compel certain other persons, who were likewise stockholders and directors of the corporation, to account for alleged secret profits made by one of them in which he was aided and abetted by the other of them (although not to his profit) in the sale of certain real property belonging to the corporation.

The following appear to be the facts: The Glendale-Verdugo Land Company was a domestic corporation formed in 1910, the existence of which was continued until March 4, 1916, when its charter was forfeited for failure to pay license tax; that defendants Robinson and Vesper and plaintiff Reid were directors of the corporation at the time its charter was forfeited and had been since before November, 1913; that Vesper became president of the corporation on November 1, 1913, and continued in that office until the corporation's demise; that Robinson was secretary of the corporation during all the period to which this controversy relates, collected the moneys coming to it, was custodian of its funds, disbursed the same, and generally handled its affairs, and after the forfeiture of its charter performed like services in connection with the settlement of the corporate affairs; that from some time in 1910 until July 7, 1914, Glendale-Verdugo Land Company was the owner of a parcel of land briefly described as lot 3 of the Verdugo tract; that H. C. Tupper and the defendant Robinson conducted a real estate business in the city of Glendale by means of a corporation styled Tupper-Robinson Company, and of which corporation Robinson was the secretary.

The following additional facts are the findings of the court, numbered in accordance therewith:

"VI.

"On the 7th day of July, 1914, there was a meeting of the board of directors of Glendale-Verdugo Land Company. All the then members of the board, namely F. H. Vesper, Spencer Robinson and S. J. Reid, were present at this meeting. It was represented at this meeting by defendant Robinson that an offer of $20,000.00 for the above-mentioned tract

had been made by one Jacob Stern; that there had then been paid to Glendale-Verdugo Land Company by Stern the sum of $2,000.00 which was applicable on the purchase price offered by him, and that he would secure payment of the $18,000.00 balance in three years with interest at six per cent per annum by mortgage of the land. This was agreed to by the directors and conveyance of the land authorized upon the terms thus specified. At the same meeting the directors authorized the assignment to Spencer Robinson of the $18,000.00 mortgage when received to secure to him an indebtedness of $11,862.30 owing him by the Glendale-Verdugo Land Company then secured by mortgage on the land which latter mortgage was to be released.

"VII.

"At the time the foregoing representations were made, there had been paid to defendant Robinson by Jacob Stern for Glendale-Verdugo Land Company divers sums of money aggregating $4000.00 to be applied on the purchase price of said land should the said Stern purchase the same and said Stern had theretofore offered to Tupper-Robinson Company and was then willing to purchase said land for $33,-000.00 to be paid as provided in a writing which Tupper-Robinson Company by its president and secretary, H. C. Tupper and the defendant Robinson had, on the 6th day of July, 1914, executed in the name of Glendale-Verdugo Land Company and delivered to the said Stern, by the terms of which writing said land was to be conveyed to one Harry Ray for the consideration of $33,000.00 to be made up of the $4000.00 paid as aforesaid by the said Jacob Stern, a promissory note for the sum of $4000.00 made by G. B. Willoughby and others secured by mortgage on 52 acres of land in Orange county, this state, bearing six per cent interest per annum and due February 7, 1915, to be assigned to defendant Robinson, and a promissory note of Harry Ray for $25,000.00 payable to Glendale-Verdugo Land Company three years from date with interest at six per cent per annum payable semi-annually and secured by mortgage of the land to be conveyed.

"VIII.

"On July 7th, 1914, defendants Vesper and Robinson as president and secretary, respectively, of Glendale-Verdugo Land Company executed the deed of said corporation con-

veying said land to Harry Ray, and the said Ray made his promissory note to Glendale-Verdugo Land Company for the sum of $25,000.00 payable in three years with interest at the rate of six per cent per annum payable semi-annually and a mortgage of the said land to said corporation to secure payment of said note and delivered said note and mortgage to the defendant Robinson for Glendale-Verdugo Land Company; and at the same time the Willoughby note above mentioned and the mortgage securing same were assigned to the said defendant Robinson. On the 15th day of July, 1914, Vesper and Robinson as president and secretary, respectively, of Glendale-Verdugo Land Company executed in the name of that corporation an assignment to defendant Robinson of the Ray note for $25,000.00 and the mortgage securing the same.

"IX.

"On July 7, 1917, $7,500.00 was paid to Robinson on the principal of the Ray note and on about January 7, 1915, there was a further payment to Robinson of $1500.00 on the principal of this note. The balance of the principal $16,-000.00 was paid to Robinson on or about the 7th day of March, 1920. Interest paid to him on the Ray note amounted to $7,105.00. The Willoughby note for $4000.00 was paid to Robinson when it fell due, February 7, 1915. He also collected on this note $140.00 interest. Altogether there was received by defendant Robinson from the sale of said Lot 3, principal and interest, the sum of $40,245.00.

"X.

"Defendant Robinson never disclosed to the plaintiffs that the true consideration for the sale and conveyance of said lot 3 was $33,000.00, but at all times held out, pretended and claimed to them that the same had been sold for $20,000.00 and no more, that no more than the sum of $2,000.00 of the purchase price had been paid before conveyance, and that the balance of $18,000.00 was secured by mortgage on the land sold payable in three years with interest at six per cent per annum. Plaintiffs relied on Robinson's statement that the land had been sold for $20,000.00 of which sum $2,000.00 had been paid in cash and $18,000.00 secured to be paid by mortgage on the land and accepted the same as true without inquiry or investigation until the latter part of the month of March, 1920, after the defendant Robinson had rendered

to each of them a statement dated March 16, 1920, accounting for but $18,000.00. Plaintiff Reid was dissatisfied with the statement received by him believing that $19,000.00 should have been accounted for and distributed to the stockholders and requested Robinson to inform him as to the disposition of the $1000.00 not covered by the statement; whereupon Robinson referred him to the books of Glendale-Verdugo Land Company for such information. Reid examined a book purporting to contain the minutes of corporate meetings and in an entry under date of July 15, 1914, found a reference to the Ray note and mortgage for $25,000. Prompted by this discovery, Reid made further inquiry and investigation whereby he learned that the price obtained for the said lot 3 was $33,000.00 instead of $20,000.00 as had been claimed and represented all along by said Robinson. Until the knowledge had come to said Reid, as stated, that the consideration paid for the lot was $33,000.00 neither he nor either of his co-plaintiffs, had any notice or knowledge whatever, actual or constructive, that more than $20,000.00 had been paid for the said lot 3, or of any fact or circumstance calculated to arouse suspicion that there had been misrepresentation on the part of Robinson as to the price paid.

"XI.

"At the time the representation that Jacob Stern's offer for said lot 3 was $20,000.00 was made at the director's meeting on July 7, 1914, it was known to the defendant Vesper that the aforementioned writing stipulating for the conveyance of said lot to Harry Ray for considerations amounting to $33,000.00 had been executed by Tupper-Robinson Company in the name of Glendale-Verdugo Land Company; that the consideration and manner of payment thereof therein specified were acceptable to the said Jacob Stern; that if said lot were conveyed to Harry Ray the actual consideration therefor would be $33,000.00 paid and delivered in way and manner provided in said writing; and that the misrepresentation at said directors' meeting as to the price to be paid for said lot was made with the intent and purpose that the defendant Robinson should make for himself a secret profit out of said transaction of sale. In his capacity as president of Glendale-Verduga Land Company said Vesper took part in the completion of the transaction of sale of said lot and knew that the consideration therefor hereinbefore men-

tioned, namely, $4000.00 cash, the Willoughby note and mort
gage for $4000.00 and the Ray note and mortgage for $25-
000.00 had been paid and delivered to the defendant Robinson.
It was also known to the said Vesper that the plaintiffs and
each of them were and was wholly ,without knowledge or in-
formation that the actual price for which said lot was sold was
$33,000.00, or any sum in excess of $20,000.00, and had ac-
cepted as true the representation that the land was being
sold for $20,000.00 and were resting on that belief, yet the
said Vesper did not at any time disclose to the plaintiffs or
any one of them that the actual price paid for said lot was
$33,000.00, but withheld and concealed from them that fact
and permitted them and each of them to remain in the belief
that the consideration for the sale and conveyance of said
lot was but $20,000.00; that such concealment by said Vesper
of the true price received for said lot was for the purpose
of aiding the said Robinson to make for himself a secret
profit from the sale of said lot.''

The first ground of appeal is that the court erred in over-
ruling defendants' general demurrer to the complaint. It is
urged that the complaint fails to state a cause of action
against the defendants or either of them for the reason that
fraud is not sufficiently alleged. An examination of the
complaint, however, discloses the fact that it is sufficient
not only in regard to allegations of necessary ultimate facts,
but that specific fraudulent acts are set forth with such
exactitude (and upon which the conclusion of fraud rests)
as to leave no firm foundation to support the objection which
is made thereto.

[1] As to the ground of demurrer that the action is
barred by the statute of limitations, it is well settled that
unless it clearly and affirmatively appears upon the face of
the complaint that the action is barred by the statute of
limitations, such objection to the complaint cannot be taken
by demurrer. No such defect appears on the face of the
complaint herein; besides, the statute (sec. 338, Code Civ.
Proc.) contains a provision to the effect that a cause of
action sounding in fraud is not deemed to have accrued until
the discovery by the aggrieved party of the facts constituting
the fraud; and the allegations of the complaint show that
the pleaded facts constituting the alleged fraud were not

discovered by any of the plaintiffs within a time which would make the statute applicable to this action.

Aside from a denial of the facts set forth in the complaint, and which facts are found by the court to be in substantial accordance therewith, the statute of limitations is set up in the answer. It is urged that the cause of action in favor of the corporation or of its stockholders arose at the time when the corporation was induced to and did part with its property, which was not later than July 7, 1914, and consequently that the time within which the action could be commenced was not later than July 7, 1917—assuming that there was either an immediate discovery or knowledge amounting to notice of the facts constituting the fraud.

The evidence shows that the Glendale-Verdugo Land Company owned the property in question subject to a mortgage of $11,862.30 in favor of Robinson; that when a sale of the property was consummated this mortgage was released by Robinson and a new mortgage of $25,000 was given to the Glendale-Verdugo Land Company by the purchaser, which mortgage, according to the minute-book of the corporation, was assigned to Robinson for the several purposes of securing the payment to him of the $11,862.30, plus interest thereon, the payment of $7,000 to the agents who made the sale, the payment to the Tupper-Robinson Company of $650, balance on its commission, and the payment of the remainder to the Glendale-Verdugo Land Company or to its stockholders; that Robinson had theretofore received $4,000 in cash on account of the sale of the property, but that he had accounted to the Glendale-Verdugo Land Company for $2,000 only; that unknown to plaintiffs he had also received in part payment of the property an assignment of a $4,000 note and mortgage on 52 acres of land in Orange County, which had also been paid to him; that on July 7, 1917, the sum of $7,500 was paid to Robinson on account of the $25,000 note which had been assigned to him; and that when the $7,500 was paid to Robinson he had received a sufficient amount of money to discharge the debt of $11,862.30, plus interest thereon, which was owing to him by the Glendale-Verdugo Land Company. [2] Up to that time Robinson had a legal right to retain any and all moneys received by him in connection with the transaction and apply them to the satisfaction of the debt owing to him by the company.

There must have been a misappropriation of money by Robinson before any fraud could have been perpetrated by him. Before Robinson had received more than sufficient money to pay to himself the indebtedness owing to him, he was under no obligation to render any accounting to the Glendale-Verdugo Land Company for any moneys theretofore received by him on its account. When the $7,500 was paid to him, and which would overpay him for any balance due to him on account of the $11,862.30 indebtedness in his favor, assuming that he had theretofore intended to defraud the Glendale-Verdugo Land Company, he might at that time have changed his mind and made an accurate accounting to the company for all the funds legally belonging to it which had come into his possession. Up to that time no action on the part of Robinson had resulted in any damage to the company; nor had any cause of action accrued as against Robinson and in favor of the land company or its stockholders. It certainly was not fraudulent to sell the land for more than the company was willing to take for it. The ultimate fraud consisted in retaining money received from the sale which belonged to the company. Until money in the hands of Robinson, which rightfully belonged to the company, was converted by Robinson to his own use, he was not actually guilty of any fraud, no matter what theretofore had been his plans and intentions with reference thereto. The effect of the statute is that an action for relief upon the ground of fraud shall not outlaw until three years shall have elapsed after the cause of action has accrued. The fraud in the instant case was not actually consummated until July 7, 1917, which (without considering certain exceptions not here applicable) would permit the bringing of an action at any time prior to July 7, 1920. As the complaint herein was filed on June 16, 1920, it follows that the bar of the statute does not apply. [3] But even if the statute of limitations were here applicable, the facts as found by the court to the effect that none of the plaintiffs "had any notice or knowledge whatever, either actual or constructive, that more than $20,000 had been paid for the said lot 3, or of any fact or circumstance calculated to arouse suspicion that there had been misrepresentation on the part of Robinson as to the price paid," are certainly conclusive of the facts in favor of all the plaintiffs, with the possible excep-

tion of plaintiff Reid. As to him it is especially contended that because he was a director of the land company and at all times had access to its books, he was in possession of such means of acquiring knowledge as would amount to notice of the facts concerning the sale of the property in question, and hence that under the provisions of subdivision 4 of section 338 of the Code of Civil Procedure, he must have commenced his action within three years following July 7, 1914. [4] As a general rule of law it may be stated that where a stockholder of a corporation seeks to maintain an action for a wrong done to the corporation, such stockholder occupies no better or different position with relation thereto than would the corporation itself suing in its own behalf. (*Smith* v. *Ferries & C. H. Ry. Co.*, 5 Cal. Unrep. 889 [51 Pac. 710].) Like most rules, however, it has its limitations and its exceptions. [5] Where the control of a corporation lies in a board of directors the members of which are personally concerned in the fraud of which complaint is made and where it would follow that no action could nor would be instituted by the corporation for redress of its wrongs, an action by a stockholder of the corporation will not be barred by reason of the lapse of time provided by the statute. (*Whitten* v. *Dabney*, 171 Cal. 629 [154 Pac. 312]; *Beal* v. *Smith*, 46 Cal. App. 271 [189 Pac. 341].) Speaking to this point in the case first cited, it is said that ''it is like the minority of an infant; his rights are not lost until he, after attaining majority, acquiesces for the prescribed time and by acquiescence affirms the acts done against his interests.'' And in the second case cited the following language appears: ''But where, as alleged here, the corporation and its board of directors were wholly under the domination of those who committed the original fraud the corporation is deemed to be in the same position as an incompetent person or a minor without legal capacity either to know or to act in relation to the fraud so committed, and during such period of incapacity the statute of limitations does not run, at least, against an innocent stockholder who was without knowledge of the fraud. Such a stockholder suing on behalf of the corporation is in the position of a guardian *ad litem*.'' [6] It is earnestly contended that Reid at least, being a director of the land company, had means of knowledge and that the circumstances were such as to place him on inquiry

to the end that he must have had notice of the fraud at so early a date in connection with the transaction in question as would start the operation of the statute and bar the action before suit was commenced. It is true that the minutes of the corporation do disclose such facts and inferences as, assuming that Reid actually read them, should have placed him as a prudent man on inquiry. He denied that he ever read the minutes until at a time very shortly before suit was commenced. There was other evidence, both for and against, as far as notice to Reid was concerned, but very little, if any, to show notice on the part of the other plaintiffs. The evidence was conflicting and the determination of the truth rested finally with the trial court. [7] There was no duty or obligation incumbent upon either Reid or any of his coplaintiffs to examine the books or the minutes of the corporation either constantly or at intervals for the purpose of detecting fraudulent acts or transactions either as against the stockholders generally or as against themselves in particular. The case of *Prewitt* v. *Sunnymead Orchard Co.,* 189 Cal. 723 [209 Pac. 995], contains the declaration of law that, "inasmuch as respondent had no actual knowledge of circumstances which would lead her to examine the books or of the matters which appeared therein, and as there was no duty imposed upon her by law to examine them, she cannot be charged with constructive knowledge of the facts which an examination of the books might have led her to discover." The same principle of law is announced in *Pacific Vinegar Works* v. *Smith,* 152 Cal. 507 [93 Pac. 85], and the following cases are also in point: *First Nat. Bank* v. *Drake,* 29 Kan. 311 [44 Am. Rep. 646]; *Rudd* v. *Robinson,* 126 N. Y. 113 [22 Am. St. Rep. 816, 12 L. R. A. 473, 26 N. E. 1046]; *Pearsall* v. *Western Union Tel. Co.,* 124 N. Y. 256 [21 Am. St. Rep. 662, 26 N. E. 534].

[8] Complaint is made that the evidence is insufficient to justify either the findings or the judgment. An examination of the transcript of the evidence, however, convinces this court to the contrary. Each of the findings is upheld by ample evidence, and while as to some of the findings there is a decided conflict in the evidence, the rule that in such circumstances the conclusions reached by the trial court shall not be disturbed by an appellate court is so well established as to require no citations to support the statement.

[9] It is finally urged that because Vesper reaped none of the benefits of the illegal transaction he should escape the judgment against him. On this point the court's findings are in substance that Vesper knew just what was being done and, with such knowledge, assisted in carrying out some of the details and thereafter concealed the facts from the plaintiffs. The evidence clearly supports the conclusion reached by the court in this regard. Mr. Vesper's duty as an officer of the corporation required of him that in all of his dealings for and on behalf of the corporation he exercise the utmost good faith. With knowledge on his part that the fraud was being attempted primarily as against the corporation and ultimately as against the stockholders, his duty to acquaint the other officers of the corporation with the facts concerning the transaction and to use every effort to prevent the consummation of the fraud was so plainly his path that it would seem impossible that he might fail to see it and to follow it, to the end that the stockholders of the corporation would suffer no detriment by reason of his negligence in performing his bounden duty to them. Even as a director of the corporation, without the added responsibility of president and manager thereof, it is plain that he could not remain silent and willingly permit, much less actively assist in, any act that would permit any part of the assets of the corporation to be fraudulently converted by one of the directors to his own use. The fiduciary relationship existing between the officers of the corporation and its stockholders forbids that a director, either expressly or impliedly, consent to a diversion of the corporate property from the corporate use to private purposes. The assumption on the part of Mr. Vesper that because the corporation was getting all it asked for the property, no damage resulted to it, even if Robinson and others received something in addition thereto, does not accord with the law affecting such transactions. He knew, or at least he should have known, that in the circumstances the corporation was entitled to every cent for which the property was sold, less legitimate expenses in connection therewith. His passive acquiescence, if not his active participation in the fraud, constituted a neglect of his duty to the corporation and to its stockholders which resulted in damage to them and for which, notwithstanding the fact that he personally did not profit financially thereby, he must

respond. **[10]** Aside from his trusteeship requiring at his peril absolute fidelity to his trust, the law of torts is to the effect that every person concerned in a wrong to another which results in damage is liable therefor, irrespective of the degree in which he therein participates and entirely without reference to the benefits which he may receive on account thereof.

The judgment is affirmed.

Conrey, P. J., and Curtis, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 3, 1923.