### GOESS v. A. D. H. HOLDING CORPORATION et al.

No. 364.

Circuit Court of Appeals, Second Circuit.

July 17, 1936.

Slade & Slade, of New York City (Maxwell Slade, David H. Slade, and Albion H. Koestler, all of New York City, of counsel), for appellant.

Conboy, Hewitt, O'Brien & Boardman, of New York City (David Asch and Hobart L. Brinsmade, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This is an action brought by the receiver of an insolvent national bank to recover from its shareholders a 100 per cent. assessment made by the Comptroller of the Currency on November 13, 1934. The bank closed its doors March 4, 1933, and never thereafter resumed business. A conservator was appointed by the comptroller on March 13th and a receiver on October 16, 1933. The complaint alleges that Schendel is a shareholder in the amount of 200 shares and demands judgment for $20,-000. His answer admits that he is a shareholder of 125 shares, but denies that he is a shareholder of the other 75 shares. As to these his answer alleges that about March 1, 1933, he was induced to purchase them by fraud of the bank and its officers; that on or about March 3, 1933, and before said shares were transferred to his name on the books of the bank, he discovered the fraud, rescinded the transaction, and demanded the return of the purchase price; and, upon information and belief, that the shares were fraudulently recorded in his name on the bank's books after March 4, 1933. His answer also sets up as a partial defense with respect to all the shares that the receiver has compromised the assessment liability of some shareholders for less than $100 per share. Pursuant to rule 113 of the New York Rules of Civil Practice, the plaintiff moved for an order striking out the answer and granting summary judgment. From the order granting this motion and the judgment entered thereon, Schendel has appealed.

It will be convenient first to dispose of the partial defense asserted against liability on all the shares. This alleges that the statute (12 U.S.C.A. § 63) requires shareholders to be held liable "equally and ratably"; that the plaintiff has compromised the assessment liability of some shareholders for less than $100 per share; and that consequently the defendant's liability must be limited to the percentage of the lowest of such compromises. These allegations present no defense to the plaintiff's claim. The words "equally and ratably" may have been stricken from section 63 by section 23 of the Act of December 23, 1913, appearing as 12 U.S.C.A. § 64. See section 26 of said act (38 Stat. 274); American Trust Co. v. Grut, 80 F. (2d) 155, 157 (C.C.A.9). But even if, as may be assumed, the law still requires the assessment to be spread equally and ratably upon all shareholders, there is express statutory authority for the receiver, with the approval of the Comptroller of the Currency and upon court order, to compromise the individual liability of any shareholder. 12 U.S.C.A. § 67. That such a compromise sets a limit upon the liability of all other shareholders is a preposterous notion. It would be insufferable to let each shareholder try out the legality of every compromise made by the receiver with other shareholders. There is nothing in the statutory language to indicate any such congressional intent. This defense was properly stricken from the answer. Hence the

plaintiff was entitled, at the least, to judgment for the assessment on the 125 shares admittedly held by the appellant.

There remains for consideration the defense asserted with respect to the other 75 shares. The actual owner of shares may be held for an assessment even though his name does not appear on the transfer books of the bank. Early v. Richardson, 280 U.S. 496, 499, 50 S.Ct. 176, 74 L.Ed. 575, 69 A.L.R. 658. The appellant's answer admitted that he agreed to purchase the shares on March 1, 1933, and paid for them on March 3d; hence he was the owner of them, and his denial that he was a shareholder of record on March 3d and his assertion upon information and belief that the stock was fraudulently recorded in his name on the books of the bank after March 4th raised no triable issue of fact. These allegations being cast aside, there remain only the allegations that his agreement to purchase was induced by fraud of the bank's officers, and that on or about March 3, 1933, upon discovery of the fraud, he rescinded the transaction and demanded the return of the purchase price, no part of which has been repaid.

The plaintiff contends that these facts, if proved, would be insufficient in law to relieve the defendant from liability for the assessment. It is settled that a shareholder may not avoid the statutory liability for assessment by rescinding after the bank's "failure," which we understand to mean insolvency. In Ryan v. Mt. Vernon Nat. Bank, 224 F. 429, 430 (C.C.A.2) this court said: "The creditors are entitled to have the statutory liability, which, for their security, the National Bank Act has imposed upon stockholders, enforced against all persons who were stockholders when the bank failed." But so far as we are advised no decision has held that a rescission demanded prior to the bank's insolvency and taking over by the comptroller is not a defense to an action for the assessment. On principle it should be. Where a party is induced to enter into a transaction with another by the latter's fraudulent misrepresentation the transaction is voidable as against the fraudulent party and all who stand in no better position. Am. Law Inst., Restatement, Contracts, § 476 (1). The victimized party may exercise the power to avoid the transaction by giving notice of rescission, demanding the return of the consideration given, and offering to restore what he received. Restatement, Contracts, § 480 (1). The consequent right to the restoration of the status quo between a stockholder who has thus exercised his power of avoidance and the defrauding corporation becomes fixed as of that time. Wm. B. Joyce & Co. v. Eifert, 56 Ind.App. 190, 105 N.E. 59, 81; Prewitt v. Sunnymead Orchard Co., 189 Cal. 723, 209 P. 995, 999; Davis v. Louisville Trust Co., 181 F. 10, 23, 30 L. R.A.(N.S.) 1011 (C.C.A.6). Therefore, when the right to rescission of the contractual and shareholdership relation is established before insolvency, it should be as enforceable in the courts after insolvency as before. So it has been held that repudiation by a defrauded stockholder before insolvency of the corporation will preserve his rights against the creditors which might have been lost had he repudiated after insolvency. Lex v. Selway Steel Corp., 203 Iowa, 792, 206 N.W. 586, 597; Savage v. Bartlett, 78 Md. 561, 28 A. 414, 416; Fear v. Bartlett, 81 Md. 435, 32 A. 322, 33 L.R. A. 721; Wilcox Trux v. Rosenberger, 156 Minn. 487, 195 N.W. 489, 491; Bohn v. Burton-Lingo Co. (Tex.Civ.App.) 175 S.W. 173, 175; Johns v. Coffee, 74 Wash. 189, 133 P. 4, 6–7; In re Etna Insurance Co. (1823) Ir.Rep. 7 Eq. 264, 272 et seq.; see Upton v. Englehart, 28 Fed.Cas. 835, at page 838, No. 16,800 (C.C.D.Iowa). These principles should be equally applicable to shareholders of a national bank where the notice of rescission is given before insolvency, for the creditors stand in no better position than the bank itself to prevent avoidance of the transaction by the defrauded shareholder because their right to the security of his superadded liability does not accrue until the failure of the bank; it being a right against those who are shareholders at the time of failure. See Scott v. Deweese, 181 U.S. 202, 213, 21 S.Ct. 585, 45 L.Ed. 822; Lantry v. Wallace, 182 U.S. 536, 549, 21 S.Ct. 878, 45 L. Ed. 1218; Scott v. Abbott, 160 F. 573, 583 (C.C.A.8). There is no allegation in the complaint at bar that the bank was insolvent on March 3d, and it appears that the conservator was not appointed until March 13th and that a finding of insolvency was made by the comptroller on October 16, 1933. There was no need for the answer to allege that the purchased shares had been offered back, since it is not alleged that they had been delivered. We

**75**

are of opinion, therefore, that the allegations of rescission on or about March 3d raise a defense sufficient in law.

█ It is next contended that the defense is a sham because, as appears from the plaintiff's affidavit in support of his motion, the defendant brought in the state court in August, 1933, an action for damages against the bank and its officers based on their fraud in inducing his purchase of these same shares. The damages claimed were $1,575, the exact amount of the purchase price, and the appellant urges that he was suing for a rescission. The pleading is ambiguous and would serve if such was the theory of action. See Clark v. Kirby, 243 N.Y. 295, 302, 153 N.E. 79; Urdang v. Posner, 220 App.Div. 609, 610, 222 N.Y.S. 396. The complaint may be construed as stating one cause of action in rescission against the bank and one cause of action in damages for fraudulent misrepresentation against the officers. The latter cause of action would not affirm the contract of sale, but would seek damages resulting from inducement of the purchase, which, although rescinded, nevertheless might leave the purchaser with a financial loss, if the full purchase price were not collected from the seller. Therefore, we do not think that the bringing of this suit in the state court necessarily proves that the defense of rescission asserted in the case at bar is a sham.

█ Finally, the plaintiff urges that Schendel's answering affidavit is insufficient because it merely reiterates what the answer sets forth without any details as to when or upon whom the demand for rescission was made. O'Meara Co. v. National Park Bank, 239 N.Y. 386, 146 N.E. 636, 39 A.L.R. 747, is relied upon. There, however, the plaintiff's supporting affidavit had set forth facts in support of the averments of the complaint; hence the defendant had to particularize in his counter affidavit, and could not merely repeat the general denials of his answer. In the case at bar, however, neither the complaint nor the plaintiff's supporting affidavit states anything inconsistent with the defendant's oath that he rescinded. Indeed, since defendant's allegations of rescission constituted an affirmative defense which plaintiff's affidavit did not attack as a fact beyond the assertion of the unwarranted conclusion from the defendant's state court suit that the defendant had elected not to rescind,

there was no further burden upon the defendant to show that his affirmative allegations in the defense were not sham. See Hessian Hills Country Club v. Home Insurance Co., 262 N.Y. 189, 195, 186 N.E. 439. Hence we cannot say that this defense is sham and that no triable issue of fact is raised. It was therefore error to strike the entire answer and enter summary judgment for the full amount of the assessment.

The judgment should be reduced to $12,-500 with interest, and a trial had as to the defendant's liability for the assessment on 75 shares. It is so ordered.