[No. 5277. Decided March 17, 1905.]

TRINITY PARISH OF SEATTLE, *Respondent,* v. AETNA
INDEMNITY COMPANY, *Appellant.*[1]

INDEMNITY—BUILDING CONTRACT—BONDS—GUARANTY OF PERFORMANCE—BREACH—ACTION ON BOND BEFORE PAYING CLAIMS. Where an indemnity bond provides that the contractor shall faithfully perform all the terms of the contract, and the contractor, having finished the building, left the state without paying claims for labor and materials, the surety is liable immediately for the breach of the contract, and the owner may sue on the bond without first paying the claims or becoming obligated to do so by judgment.

SAME—NOTICE OF LOSS—WAIVER OF COMPLETION OF BUILDING. Where an indemnity bond guaranteeing a building contract provided for immediate notice to the surety of acts of the contractor involving a loss, the failure to give notice of the non-completion of the building on time, or extending the time for completion as provided for in the contract, is a waiver of damages for its non-completion on time, but not for unpaid bills, as the surety cannot complain of a breach of the contract waived by the owner which does not operate to the prejudice of the surety.

SAME—IMMEDIATE NOTICE—TEN DAYS. Where an indemnity bond guaranteeing a building contract provided for immediate notice to the surety of acts by the contractor involving a loss, and the contractor left the state without paying claims for labor and materials, notice of the unpaid claims, given within ten days after knowledge thereof by the owner, is a sufficient notice under the bond.

SAME—ACTION ON BOND BEFORE PAYMENT OF CLAIMS—ESTABLISHMENT OF CLAIMS—SUBROGATION OF AMOUNT DUE TO PRIMARY PAYMENT OF CLAIMS. In an action upon an indemnity bond guaranteeing the faithful performance of a building contract, to recover the amount of unpaid bills for labor and materials, in which the claimants for labor and materials are made parties and their claims established, it is proper to subrogate the amount due on the bond to the primary payment of the claims, where the surety was given an opportunity to contest the claims and failed to do so, since it became bound therefor to the extent of its liability on the bond.

[1]Reported in 79 Pac. 1097.

Appeal from a judgment of the superior court for King county, Rudkin, J., entered January 21, 1903, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action upon an indemnity bond in the nature of specific performance. Affirmed.

*Root, Palmer & Brown,* for appellant, contended, among other things, that no action lies until the owner shows actual damages suffered by payment of the claims. *Central Trust Co. v. Louisville Trust Co.,* 87. Fed. 23; *Id.,* 100 Fed. 545; *Henderson-Achert Lith. Co. v. John Shillito Co.,* 64 Ohio St. 236, 60 N. E. 295, 83 Am. St. 745; *Wicker v. Hoppock,* 6 Wall. 94; *Hoy v. Hansborough,* 1 Freeman's Ch. (Miss.) 533; *M'Lean v. Ragsdale,* 31 Miss. 701; *Jeffers v. Johnson,* 21 N. J. L. 73; *Michigan St. Bank v. Hastings,* 1 Doug. (Mich.) 259; *Gregory v. Hartley,* 6 Neb. 356; *Wilson v. Smith,* 23 Iowa 252; *Gato v. Warrington,* 37 Fla. 542, 19 South. 883; *American Bldg. & Loan Ass'n v. Waleen,* 52 Minn. 23, 53 N. W. 867; *Campbell v. Rotering,* 42 Minn. 115, 43 N. W. 795, 6 L. R. A. 278; *Solary v. Webster,* 35 Fla. 363, 17 South. 646; *Jenckes v. Rice,* 119 Iowa 451, 93 N. W. 384; *Taylor v. Coon,* 79 Wis. 76, 48 N. W. 123; *Estate of Hill,* 67 Cal. 238, 7 Pac. 664; *Cochran v. Selling,* 36 Ore. 333, 59 Pac. 329; *Valentine v. Wheeler,* 122 Mass. 566, 23 Am. Rep. 404; *Tate v. Booe,* 9 Ind. 13; *Israel v. Reynolds,* 11 Ill. 218; *Miller v. Fries,* 66 N. J. L. 377, 49 Atl. 674; *Tompkins v. Floyd County etc. Ass'n.,* 19 Ind. 197; *Loyd v. Marvin,* 7 Blackf. (Ind.) 465. The failure to give immediate notice is fatal to the action, ten days not being a reasonable time, as a matter of law. *National Surety Co. v. Long,* 125 Fed. 887; *Travelers' Ins. Co. v. Myers,* 62 Ohio St. 529, 57 N. E. 458, 49 L. R. A. 760; *Ermen-*

*trout v. Girard Fire & M. Ins. Co.,* 63 Minn. 305, 65 N. W. 635; *Whitehurst v. North Carolina Mut. Ins. Co.,* 7 Jones' Law 433, 78 Am. Dec. 246; *Underwood Veneer Co. v. London Guarantee etc. Co.,* 100 Wis. 378, 75 N. W. 996; *National Constr. Co. v. Travelers' Ins. Co.,* 176 Mass. 121, 57 N. E. 350; *Employers' Liability Assur. Corp. v. Light etc. Co.,* 28 Ind. App. 437, 63 N. E. 54; *Northwestern Tel. Ex. Co. v. Maryland Casualty Co.,* 86 Minn. 467, 90 N. W. 1110; *London Guarantee & Acc. Co. v. Siwy,* (Ind. App.) 66 N. E. 481; *Rooney v. Maryland Casualty Co.,* 184 Mass. 26, 67 N. E. 882; *Smith & Dove Mfg. Co. v. Travelers' Ins. Co.,* 171 Mass. 357, 50 N. E. 516; *Green v. Northwestern Live-Stock Ins. Co.,* 87 Iowa 358, 54 N. W. 349; *Foster v. Fidelity & Casualty Co.,* 99 Wis. 447, 75 N. W. 69; *Baker v. German Fire Ins. Co.,* 124 Ind. 490, 24 N. E. 1041; *Parker v. Farmers' Fire Ins. Co.,* 179 Mass. 528, 61 N. E. 215; *Peabody v. Satterlee,* 166 N. Y. 174, 59 N. E. 818, 52 L. R. A. 956; *Cook v. North British etc. Ins. Co.,* 183 Mass. 50, 66 N. E. 597; *Matthews v. American Cent. Ins. Co.,* 154 N. Y. 449, 48 N. E. 751, 61 Am. St. 627; *Quinlan v. Providence Wash. Ins. Co.,* 133 N. Y. 356, 31 N. E. 31, 28 Am. St. 645; *Pickel v. Phenix Ins. Co.,* 119 Ind. 291, 21 N. E. 898; *Mellen v. Hamilton Fire Ins. Co.,* 17 N. Y. 609; *La Force v. Williams City Fire Ins. Co.,* 43 Mo. 518; *Inman v. Western Fire Ins. Co.,* 12 Wend. 452; *California Sav. Bank v. American Surety Co.,* 87 Fed. 118.

*Walter S. Fulton* and *Vince H. Faben,* for respondent.

MOUNT, C. J.—On the 18th day of April, 1902, the respondent entered into a contract with N. H. Beer, by the terms of which contract said Beer was to furnish all the materials, and erect a church building in the city of

Seattle, in accordance with certain drawings and specifications, at an agreed price of $25,800. The contract was in the usual form of builders' contracts as prepared by architects, and provided, among other things, that changes and alterations might be made in the work as it progressed; that the building should be completed on or before September 1, 1902, and for liquidated damages at the rate of $5 per day for each day that the work should remain uncompleted after that date; and that the owner could, at any time, on default of the contractor, on two days' notice, assume the work and discharge the contractor. It also provided that, for each $2,000 worth of work done, the contractor should receive seventy-five per cent of that amount, and, on completion and acceptance of the work, he should receive seventy-five per cent of the balance then due, and final payment within forty days after the contract was fulfilled. It also provided that the contractor should furnish a bond in the sum of $7,500 for the faithful performance of the contract. This bond was furnished by the Aetna Indemnity Company, the appellant. This bond, after reciting the terms of the contract and specifications which were attached thereto, provided, among other things, as follows:

"The condition of the foregoing obligation is such that, if the said principal shall well, truly, and faithfully comply with all the terms, covenants, and conditions of said contract on his part to be kept and performed, according to its tenor, then this application shall be void; otherwise to remain in full force and effect: Provided, that the said surety shall be notified in writing of any act on the part of said principal, or his agent or employees, which may involve a loss for which the said surety is responsible hereunder, immediately after the occurrence of such act shall have come to the knowledge of the fully authorized representative, . . . of the Trinity Parish, . . . . Provided, that if the said principal shall fail to comply with all the terms of said contract to such an extent that

the same shall be forfeited, then the said surety shall have the right and privilege to assume said contract and to sub-let or complete the same,  .  .  .  Provided further, that in the event of any breach of the conditions of this bond said surety shall be subrogated to all the rights and properties of said principal arising out of said contract, and all payments deferred, and any and all moneys and property at that time due said principal under and by virtue of said contract shall be credited upon claim which said Trinity Parish of Seattle will make upon said surety, .  .  .  Provided further, that any suits at law or proceedings in equity brought against this bond to recover any claim hereunder must be instituted within six months after the first breach of said contract."

After the execution of the contract and bond, the contractor proceeded with the work.  The building was not completed at the time designated, because, during the progress of the work, certain extras were furnished which had the effect to extend the time for the completion of the building.  On January 3, 1903, respondent gave the appellant written notice of its intention to make the last partial payment, under the contract between respondent and said contractor, and the payment was subsequently made.  The work was substantially completed on or about January 20, 1903, when the contractor quit the work and left the state.  The respondent thereupon took possession of the building, and corrected some defective work at a cost of about $150.  At the time said Beer quit the work, he left a number of bills for materials unpaid.  On January 30, 1903, soon after respondent learned of these unpaid bills, notice was given to appellant that the contractor had failed to pay for said materials and labor.  At the time this action was begun, liens had been filed on the building for claims amounting to some $1,500, but liens had not been filed for other claims amounting to about $4,000. The action was brought in the nature of specific performance, and all the lien and other claimants were made par-

ties and required to set up and establish their claims. Judgment was entered substantially as prayed for against the bonding company. This appeal is from the judgment rendered against the appellant.

Appellant insists that neither the complaint nor the evidence is sufficient to establish a cause of action, because, at the time the action was begun, the respondent had paid no claims against the building and had, therefore, suffered no damages by the default of the contractor. The argument is based upon the contention that the bond given by the appellant was one of indemnity merely. Many authorities are cited to the effect that, when the undertaking is one of indemnity, there is no liability until the respondent has been damaged by reason of having actually paid out money, or become obligated by a judgment to do so. Conceding, without deciding, that this is the general rule, where the undertaking is indemnity, merely, to save the respondent harmless from loss of damages which he may sustain, we cannot agree to the contention that this bond is one to save the respondent harmless from loss of damages which he may sustain. It does that, to be sure, but it does more. It provides:

"If the said principal shall well, truly and faithfully comply with all the terms, covenants and conditions of said contract on his part to be kept and performed according to its tenor, then this obligation shall be void; otherwise to remain in full force and effect."

This, and other provisions quoted, clearly show that the bond is a guaranty that the contractor will perform his contract. When the contractor failed to perform his contract, the guarantor became immediately liable for the faithful performance of all its terms. This point was decided by this court in *Friend v. Ralston,* 35 Wash. 422, 77 Pac. 794. It is true that, in the *Friend* case, liens had been foreclosed and judgment rendered, but the failure

to pay for the materials was the breach of the contract
which gave the right of action. The judgment of foreclo-
sure simply established the amount of the liability. In
speaking to this point, we said, at page 430:

"The covenant in the building contract on the part of th
contractor with Mrs. Friend is as between them equivalent
to a direct promise to pay for materials used in the con-
struction of the building, and a breach of the contract oc-
curred when the contractor suffered the obligation to
become a charge on her property; at least, she was entitled
to treat it as a breach. It may be true that she was not
obliged to do so; that she could have waited until the lien
had become fixed and determined by judgment against her
property, and treated that as the breach of the bond, thus
escaping the onus of establishing at the trial the validity
of such lien and the amount of the indebtedness, but she
was not obliged to delay action in that behalf. She could
treat the failure of the contractors to keep her property free
from such incumbrance as a breach of the contract."

In this case the respondent, for the same reason, could
treat the failure of the contractor to pay for the labor and
materials as a breach of the contract, as in fact it was, be-
cause such failure was a failure of the contractor to well,
truly, and faithfully comply with all the terms, covenants,
and conditions of said contract on his part to be kept and
performed. We think, therefore, that the complaint
stated a cause of action, and was not prematurely brought.

It is next claimed that the provision in the bond, to the
effect that immediate written notice, of any act on the part
of the principal which may involve loss, shall be given to
the surety, is the essence of the bond, and that, since notice
was not given until January 30, 1903, five months after
the failure to complete the building in time, no recovery
can now be had upon the bond. The court below held that
the failure to notify the bonding company of the default
in completing the building within the prescribed time was

a waiver of that item of damages prior to the notice; but that the notice of the unpaid claims for materials, given within ten days after knowledge by respondent, was sufficient for those items, and for loss occurring after that time. These rulings were clearly right. In *Beebe v. Redward,* 35 Wash. 615, 77 Pac. 1052, we held that the surety cannot complain of any breach of the contract which the owner waives, that does not operate to his prejudice. See, also, *Ovington v. Aetna Indemnity Co.,* 36 Wash. 473, 78 Pac. 1021.

In this case the contract provided for damages at the rate of $5 per day, if the buildings had not been completed on the 1st day of September, 1902. The contract also provided for an extension of the time, upon certain contingencies. The court found at the trial that the time was extended some forty-one days, and gave no damages for this time. The failure to immediately notify the surety company of the non-completion of the building by the contractor on time was, at most, a waiver of the claim for damages in that respect, but was not a waiver of the entire contract. *Ovington v. Aetna Indemnity Co., supra; Heffernan v. United States Fidelity etc. Co., ante* p. 477, 79 Pac. 1095.

The record discloses that Beer, the contractor, was actively engaged in the work until about the 20th of January, 1903. On that date, after drawing all the money due him upon the contract, except what was coming on final payment not then due, he suddenly left the state, and thereupon it was discovered that claims for labor and materials had not been paid. Within ten days after this time, the appellant was notified in writing of this defalcation. This was a sufficient notice within the meaning of the provision of the bond. *Remington v. Fidelity & Dep. Co.,* 27 Wash. 429, 67 Pac. 989.

The court, in its conclusions of law and decree, ordered the amount due the contractor from the respondent to be credited on the bond, and that the amount due on the bond should be applied in payment of the claims for labor and material established on the trial. If the bond in this case was a contract of guaranty, it follows that it was not error to subrogate the amount due on the bond to the primary payment of these claims. Appellant at the trial was given an opportunity to contest these claims, which it refused to do. It was, therefore, bound for the amount thereof to the extent of the liability on the bond.

There is no error in the record. The judgment is affirmed.

FULLERTON, HADLEY, and DUNBAR, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.