[Civ. No. 5661. First Appellate District, Division One.—November 19, 1926.]

CHARLES J. BLUMENTHAL, Appellant, v. J. W. LARSON et al., Defendants; UNITED STATES FIDELITY AND GUARANTY COMPANY (a Corporation), Respondent.

[1] CORPORATE SECURITIES ACT—BROKER'S BOND—PROVISIONS OF LAW —STATUTORY CONSTRUCTION.—While the phrase "provisions of law" is a very broad and general one, yet as used in subsection 3 of section 5 of the Corporate Securities Act, as amended in 1923 (Stats. 1923, p. 90), which provides that an applicant for a broker's certificate shall deliver to the commissioner of corporations a good and sufficient bond, for a specified amount, conditioned upon the faithful compliance with the "provisions of law" by said applicant, etc., that phrase relates only to the provisions of the Corporate Securities Act.

[2] ID.—LEGISLATIVE INTENT.—A statute is to be construed according to the intent of the law-making body, the intent being the vital part and the primary rule of construction being to ascertain and give effect to that intent.

[3] ID.—SCOPE AND MEANING OF STATUTE—LITERAL CONSTRUCTION—LEGISLATIVE INTENT.—If a statute is plain, certain, and unambiguous, so that no doubt arises from its own terms as to its scope and meaning, a bare reading suffices and there is no room for construction, but the mere literal construction ought not to prevail if it is opposed to the intention of the legislature apparent by the act itself, and if the words are sufficiently flexible to admit of some other construction it should be adopted to effectuate the intention.

[4] ID.—TITLE AND PURPOSE—OBJECT TO BE ACCOMPLISHED—INTENT.—The language of an act should be construed in view of its title and its purpose; and it is indispensable to a correct understanding of the statute to inquire first what is the subject of it and what object is intended to be accomplished, and when this is ascertained the answer is found to all its intricacies, and general words or phrases may be restrained to it and those of narrower import may be expanded to effectuate the intent.

[5] ID. — PREVENTION OF FRAUD — SALE OF WORTHLESS SECURITIES.—The manifest and declared purpose of the Corporate Securities Act is to prevent fraud in the sale of securities, as the same is defined in section 14 of the act; and that section is confined solely to sales of worthless securities and has no application to transactions between brokers and their clients generally.

[6] ID.—BREACH OF CONTRACT—ACTION AGAINST BOND.—The law affords an ample remedy for the breach of a contract or for any illegal act with reference to sales of legitimate securities, but it is not to be found in an action against the bond given in conformity to subsection 3 of section 5 of the Corporate Securities Act.

[7] ID.—PURPOSE OF BOND—CREDIT INSURANCE—STRICT CONSTRUCTION. The bond given in conformity to the provisions of subsection 3 of section 5 of the Corporate Securities Act was never intended to be a contract of credit insurance, but is strictly a statutory bond and liability thereon does not extend beyond the terms of the act.

---

2. See 23 Cal. Jur. 725; 25 R. C. L. 961.

3. See 23 Cal. Jur. 721, 734; 25 R. C. L. 957, 967.

4. See 23 Cal. Jur. 771.

5. Blue sky laws, notes, 15 A. L. R. 262; 24 A. L. R. 523; 27 A. L. R. 1169; 30 A. L. R. 1331; 40 A. L. R. 1014. See, also, 6 Cal. Jur. 779.

[8] ID. — BREACH OF CONTRACT OF PURCHASE — FRAUD — LIABILITY OF BOND.—Where a licensed securities broker breaches his contract of purchase of securities, and in a broad sense may be said to have violated the substantive law, but no fraud is claimed in the sale of any security good or otherwise, this is not a violation of law for which the bond prescribed by subsection 3 of section 5 of the Corporate Securities Act was given.

(1) 36 **C. J.**, p. 967, n. 91; 36 **Cyc.**, p. 1103, n. 88.  (2) 36 **Cyc.**, p. 1106, n. 29.  (3) 36 **Cyc.**, p. 1107, n. 31, 32, p. 1108, n. 38, 46. (4) 37 **C. J.**, p. 271, n. 60 New; 36 **Cyc.**, p. 1110, n. 54, p. 1119, n. 35 New, p. 1133, n. 91.  (5) 37 **C. J.**, p. 270, n. 40, p. 271, n. 50, 52 New.  (6) 37 **C. J.**, p. 271, n. 60 New.  (7) 37 **C. J.**, p. 271, n. 60. (8) 37 **C. J.**, p. 271, n. 60 New.

APPEAL from an order of the Superior Court of the City and County of San Francisco dismissing an action against the surety on a bond given under the Corporate Securities Act. Frank J. Murasky, Judge. Affirmed.

The facts are stated in the opinion of the court.

Harry C. Bocchio, Ralph Starke and Daniel A. Ryan for Appellant.

Horace W. B. Smith and P. R. Lund for Respondent.

Joseph G. De Forest, L. W. Irving, Redman & Alexander, Jesse H. Steinhart, John J. Goldberg, Hartley Peart, Gus. L. Baraty, John Ralph Wilson, Ernest T. Hall, Cooley & Gallagher, Guy Leroy Stevick and H. Raymond Hall, as *Amici Curiae* in support of Respondent.

P. A. Bergerot, A. P. Dessouslavy, Everette C. McKeage and J. T. Mitchell, as *Amici Curiae* in Support of Appellant's Petition for a Hearing by the Supreme Court.

TYLER, P. J.—Appeal from an order dismissing an action against a surety on a bond given under the Corporate Securities Act.

There is no dispute as to the facts. The complaint contained two counts arising out of the same transaction. The first is an open book account for securities bought and sold by plaintiff for the account of the defendant Larson under

which it is sought to recover the sum of $620. The second is for a breach of a contract for the sale and purchase of securities, sold by plaintiff and purchased by the defendant, and it alleges that by reason of such breach plaintiff was damaged in the sum of $620. The complaint further alleges, in each count thereof, that defendant Larson was an investment securities broker, duly licensed as such by the commissioner of corporations; that on the thirtieth day of June, 1924, the defendant United States Fidelity and Guaranty Company executed to the commissioner of corporations the bond required by the Corporate Securities Act to be filed by all applicants for certificates authorizing them to act as investment securities brokers at the time of filing their application therefor; that said bond was in the sum of $5,000 and was executed by defendant Larson, as principal, and by the defendant United States Fidelity and Guaranty Company as surety, said bond being given to guarantee the faithful compliance with the provisions of law on the part of defendant Larson, and on the part of his salesmen, agents and employees; that said bond was renewed on the fifteenth day of February, 1925, by said principal and surety and during all the times mentioned in the complaint was in full force and effect. Defendant Surety Company interposed a general demurrer to the complaint, alleging that it did not state facts sufficient to constitute a cause of action against it. The court sustained the demurrer and upon plaintiff's failure to amend entered judgment dismissing the action as to said defendant Surety Company. This is an appeal from the ruling on demurrer and from the judgment of dismissal.

The action, in so far as it affects the Surety Company, is bottomed upon subsection 3 of section 5 of the Corporate Securities Act, as amended in 1923 (Stats. 1923, p. 90). The subdivision reads as follows: "At the time of filing an application for a broker's certificate, the applicant shall deliver to the Commissioner of Corporations, a good and sufficient bond for $5,000.00 payable to the State of California, to be executed by said applicant, together with a surety company, and to be approved by the Commissioner of Corporations. Said bond shall be conditioned upon the faithful compliance with the provisions of law by said applicant and by all agents representing the said applicant,

and shall provide that upon failure to so comply the applicant shall be liable to pay any and all persons who may suffer loss by reason thereof.''

The sole question here presented is the meaning to be given to two phrases contained in the above-quoted paragraph of the act in question, reading as follows: ''Said bond shall be conditioned upon faithful compliance *with the provisions of law* by said applicant . . . 'and' upon failure to so comply the applicant shall be liable *to any and all persons who may suffer loss* by reason thereof.''

It is appellant's contention that the phrase ''with the provisions of law'' should be so construed as to include the transaction in question, and that this being so the bond is liable for the loss suffered by plaintiff by reason of defendant Larson's refusal to accept and pay for the balance of the stock ordered purchased for his account.

[1] While the phrase ''provisions of law'' is a very broad and general one, we are of the opinion that it only refers to the provisions of the Corporate Securities Act. There are numerous rules of statutory construction to guide courts in ascertaining the true meaning of a statute. [2] A statute is to be construed according to the intent of the law-making body. The intent is the vital part and the primary rule of construction is to ascertain and give effect to that intent. [3] If a statute is plain, certain, and unambiguous, so that no doubt arises from its own terms as to its scope and meaning, a bare reading suffices and there is no room for construction. The mere literal construction, however, ought not to prevail if it is opposed to the intention of the legislature apparent by the act itself; and if the words are sufficiently flexible to admit of some other construction it should be adopted to effectuate the intention. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [4] The language of an act should be construed in view of its title and its purpose. It is indispensable to a correct understanding of the statute to inquire first what is the subject of it and what object is intended to be accomplished. When this is ascertained the answer is found to all its intricacies. General words or phrases may be restrained to it, and those of narrower import may be expanded to effectuate the intent. Guided by these rules

it seems plain to us that the phrase in question relates solely to the provisions of the Corporate Securities Act and not to all laws generally. The title of the act in question declares it to be one for the regulation and supervision of companies, brokers, and agents, to prevent fraud in the sales of securities, and it provides for the enforcement of the act and punishment for violation of its provisions. [5] The manifest and declared purpose is to prevent fraud in the sale of securities, as the same are defined by section 14 of the statute. This section sets forth the prohibited acts which would constitute fraud, the prevention of which was the purpose of the statute and bond. It reads as follows: "Every officer, agent, or employee of any company and every other person, who knowingly authorizes, directs, or aids in the issue or sale of, or issues or executes, or sells, or causes or assists in causing to be issued, executed, or sold, any security, in nonconformity with a permit of the commissioner then in effect authorizing such issue, or contrary to the provisions of this act, or of the constitution of this state, or who, in any application to the commissioner, or in any proceeding before him, or in any examination, audit, or investigation made by him or his authority, knowingly makes any false statement or representation, or who, with knowledge of its falsity, files or causes to be filed in the office of the commissioner any false statement or representation concerning such company or the property which it then holds or proposes to acquire, or concerning its officers or its financial condition or other affairs, or concerning its proposed plan of business, or who, with knowledge of the falsity of any such statement or representation, issues, executes, or sells, or causes to be issued, executed, or sold, any security, without first informing the commissioner of the falsity of such statement in writing, or who, directly or indirectly, knowingly applies, or causes or assists in causing to be applied, the proceeds, or any part thereof, from the sale of any security to any purpose contrary to the provisions of the permit authorizing the issue of such security, or to any purpose specified in such permit in excess of any amount limited in such permit to be used for such purpose, or who, with knowledge that any security has been issued or executed in violation of any of the provisions of this act, sells or offers the same for sale, or who,

with knowledge that any advertisement, pamphlet, prospectus, or circular concerning any security contains any statement that is false or misleading, or otherwise likely to deceive a reader thereof issues, circulates, or publishes the same, or shall cause the same to be issued, circulated, or published, or who, in any other respect, wilfully violates or fails to comply with any of the provisions of this act, or who, in any other respect, wilfully violates or fails, omits, or neglects to obey, observe, or comply with any order, permit, decision, demand, or requirement, or any part or provision thereof of the commissioner under the provisions of this act, is guilty of a public offense and shall be punished by imprisonment in the state prison not exceeding five years, or in a county jail not exceeding two years, or by a fine not exceeding five thousand dollars, or by both such fine and imprisonment.'' (1 Deering's Gen. Laws 1923, p. 1414.)

It is clearly apparent from a reading thereof that the section is confined solely to sales of worthless securities and that it has no application to transactions between brokers and their clients generally. [6] The law affords an ample remedy for the breach of a contract or for any illegal act with reference to sales of legitimate securities, but it is not to be found in an action against the bond given in conformity to the provisions of the act in question. [7] The bond required under the act was never intended to be a contract of credit insurance. It is strictly a statutory bond and liability thereon does not extend beyond the terms of the act. The doctrine of *strictissimi juris* applies. [8] Here no fraud was alleged in the sale of any security good or otherwise. The defendant Larson did not fully comply with the terms of his contract of purchase. In a broad sense he may be said to have violated the substantive law in breaching his contract of sale, but this is not the violation of law for which the bond was given. To so construe the phrase would be to create a right of action under innumerable circumstances and conditions. The bond in our opinion was not given to insure on the part of Larson his proper adherence to all laws, substantive and otherwise, but solely for a compliance with the provisions of the statute, which, as we have seen, was enacted for the purpose of preventing the formation of corpora-

tions and the sale of stock thereof without the supervision of the corporation commissioner. This is the manifest intent and purpose of the act and the bond beyond any question was given solely for the purpose of securing compliance with its provisions. (*People ex rel. New York etc. R. Co.* v. *Wilcox,* 200 N. Y. 423 [94 N. E. 212].)

We are cited to the case of *Zapf* v. *Redenour,* 198 Iowa, 1006 [200 N. W. 618], as upholding appellant in his contention. The bond upon which the action was predicated in that case was given in conformity to a statute much broader in its terms than the one with which we are here dealing. It is therefore not authority upon the question. Statutes of the character here involved are being amended so as to be more comprehensive in their scope. Our own statute has been so amended (Stats. 1925, p. 962). The present controversy, however, is in no manner affected by the change, as the cause of action here alleged arose long prior to such amendment. The extent of the liability of a bond given under the law as it now stands is a question we are not called upon to consider or discuss. From what we have said it follows that the judgment should be affirmed. It is so ordered.

Campbell, J., *pro tem.,* and Knight, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 18, 1927.