[Civ. No. 6559. First Appellate District, Division Two.—January 31, 1929.]

GEORGE L. ANTHONY, Appellant, v. JAC. F. VAN et al., Defendants; INDEMNITY INSURANCE COMPANY OF NORTH AMERICA (a Corporation), Respondent.

Dunne, Dunne & Cook, A. B. Dunne and Clifton R. Gordon for Appellant.

Hartley F. Peart, Gus L. Baraty and Charles V. Barfield for Respondent.

GOODELL, J., *pro tem.* — This appeal is from a judgment entered upon the sustaining of the demurrer of the respondent Indemnity Company to the complaint, without leave to amend, in an action upon a bond for $5,000 executed on January 1, 1925, by the defendants Jac. F. Van and others as principals and the respondent as surety.

The bond was given pursuant to paragraph 3 of section 5 of the Corporate Securities Act (Stats. 1917, p. 677), as amended in 1923 (Stats. 1923, p. 90), which, as a prerequisite to the issuance of a broker's certificate by the commissioner, called for the filing of a bond for $5,000 payable to the state of California "conditioned upon the faithful compliance with the provisions of law" by the applicant and containing the further provision "that upon failure to so comply the applicant shall be liable to pay any and all persons who may suffer loss by reason thereof."

The complaint alleges the filing of the bond, the issuance of the certificate, and a breach of the condition of the bond, in that the defendants, while acting as appellant's brokers, converted securities entrusted to them for sale, resulting in

the loss to appellant of uuwards of $5,000. But there is no allegation to connect the conversion with a violation of the Securities Act, and because of the absence of such allegations the trial court held that the complaint stated no cause of action against the surety.

■ Counsel for appellant contend that the legislative intent in requiring such bond was to safeguard persons dealing with licensed brokers against any and every actionable wrong or defalcation of the character sued upon, whether denounced by the "Blue Sky" law or not; and they argue that the words "provisions of law" are broad enough to include not only written or statute law, but also general rules or principles established by judicial decision.

In the case of *Blumenthal* v. *Larson,* 79 Cal. App. 726 [248 Pac. 681], which was an action on a broker's bond executed under the same act, there was the same absence of allegation showing the transaction to be in any way related to, or in violation of, the Securities Act. In affirming the judgment in favor of the surety it was held that liability upon such bonds cannot be fastened upon the surety unless the loss arises from a violation of the Securities Act itself. The court there says: "While the phrase 'provisions of law' is a very broad and general one, we are of the opinion that it only refers to the provisions of the Corporate Securities Act" and, further, "it is clearly apparent from a reading thereof that the section is confined solely to sales of worthless securities and that it has no application to transactions between brokers and their clients generally. . . . The bond required under the act was never intended to be a contract of credit insurance."

The recent case of *Mitchell* v. *Smith,* 204 Cal. 197 [267 Pac. 540], was likewise an action against brokers and their surety for loss arising out of dealings in securities, but the securities were not alleged to have been worthless, or issued or sold under, or otherwise subject to, the Securities Act. The court, referring to the language "provisions of law," there says: "That provision has been construed in the recent case of *Blumenthal* v. *Larson* . . . to mean that a surety is liable for a failure on the part of the broker to comply with the provisions of law set out in the Corporate Securities Act of 1923, and not upon his failure to comply with all the general

laws," and adds that that case is "conclusive against plaintiff's right to recover."

The bond sued on herein was in the same form as the bonds in both cited cases; all three bonds were given for the same purpose, and were drawn so as to comply with the same statute. The broker's default which gives rise to this action was no more a violation of the Securities Act than were the losses sued on in the Blumenthal and Mitchell cases and those authorities, therefore, would seem definitely to settle the question.

Counsel for the appellant point out, however, that in neither of those cases was attention drawn to certain features of the Securities Act which, they claim, furnish strong intrinsic evidence supporting the construction for which they contend. They show that the act has two distinct purposes, (1) the regulation of the issuance and sale of securities, and (2) the regulation of investment brokers; that in that part of the statute dealing with the issuance and sale of securities the words "contrary to the provisions of this act" were used, while in that part having to do with the licensing and bonding of brokers the expression "contrary to the provisions of law" was employed. From this they argue that the use of the broader language in the latter part evinces, by contrast, a studied intention to subject the surety to liability for any and every defalcation or wrong, however unrelated it might be to the other purposes of the act. But in the Blumenthal case the act in question was considered and analyzed with great care; a rehearing was granted and therein the court had the additional aid of briefs filed by numerous *amici curiae*. We are satisfied that in the searching examination to which the act was then subjected no part of its language was overlooked. Moreover, when it is borne in mind that in the Mitchell case the supreme court reaffirmed the principle of the Blumenthal case, the meaning of the statutory language is no longer open to any question.

Finally, appellant's counsel seek to distinguish this case from the Blumenthal and Mitchell cases because in both of them the losses were suffered before the 1925 amendment, while here the losses were after, as well as before, the change. The amendment went into effect about July 23, 1925 (Stats. 1925, p. 967), and it changed paragraph 3 of

section 5 to read, "Said bond shall be conditioned upon the strict compliance with the provisions *of this act*" (instead of "faithful compliance with the provisions of law") "and the honest and faithful application of all funds received and the faithful and honest performance of all obligations and undertakings in the purchase or sale of securities by said broker. . . . "

The bond here involved was executed on January 1, 1925, some months before the amendment, and it was drafted, as is usual in such cases, in language designed to bind the surety to the obligation which the statute *then* prescribed. It reserved the right of cancellation on fifteen days' notice. When the law was amended no new bond was filed nor was anything in the nature of a "rider" affixed showing an intention to alter the obligation theretofore assumed by the surety, to meet the new statutory requirement. The bond, conforming to the old statute, simply remained on file and the broker's certificate remained outstanding. The respondent Indemnity Company was, of course, charged with knowledge of the change in the law, as was its principal, the broker. From these premises the appellant seeks to draw the conclusion that as the respondent surety did not cancel the bond after the amendment was adopted, it elected, by its inaction, to suffer the bond to remain in full force, and that consequently when the amendment prescribed new conditions for brokers' bonds it automatically enlarged the obligation of this bond. Their contention, in other words, is that the amendment, by itself, and without the scratch of a pen by the surety, revitalized the instrument sued upon.

The Blumenthal case holds (as must be obvious anyway) that such a bond "is strictly a statutory bond and liability thereon does not extend beyond the terms of the act." We adopt what was said in that case respecting the meaning of the amendatory language, i. e., that "the extent of the liability of a bond given under the law as it now stands is a question we are not called upon to consider or discuss," but it is sufficient to say that the amendment requiring a broker's bond to be conditioned also upon "the honest and faithful application of all funds received and the faithful and honest performance of all obligations and undertakings in the purchase or sale of securities by said broker . . . " introduced a material change not contained in or contemplated by the 1923 act, as construed in the Blumenthal and Mitchell cases.

The rule is a familiar one that "the law in force at the date of a public bond, fixing a certain condition for it, saying what its obligations shall be, is a part of it as effectively as if such obligations were in words inserted in it." (*State* v. *Nutter*, 44 W. Va. 385 [30 S. E. 67], quoted with approval in *Milliron* v. *Dittman*, 180 Cal. 443 [181 Pac. 779].) The appellant cites the Milliron case and others to the same effect in support of its argument, but this line of decisions goes no further than to hold that it is the law *at the time the bond is written*—when the surety's contract is made—that "enters into and becomes a part of the agreement." (*Hub Hardware Co.* v. *Aetna Acc. & Liability Co.*, 178 Cal. 267 [173 Pac. 81].) "The bond should be read by the light of the law under which it was required and received." (*Macready* v. *Schenck*, 41 La. Ann. 456 [6 South. 517].) "Sureties engage with eyes open to that law." (*State* v. *McGuire*, 46 W. Va. 328 [76 Am. St. Rep. 822, 33 S. E. 313].) To the same effect are *Town of Mill Valley* v. *Massachusetts Bonding & Ins. Co.*, 68 Cal. App. 372, 378 [229 Pac. 891], and *Malachowski* v. *Varro*, 76 Cal. App. 207, 213 [244 Pac. 936]. No case is cited which goes so far as to hold that in a bond of this character, not only the statute in force when the bond is written, but amendments not then contemplated, enter into the surety's contract.

To hold that the surety intended to assume the new and different obligation created by the 1925 amendment, by its mere passiveness in omitting to "cancel" the bond, with nothing in the bond itself or supplied subsequently to show that it so intended, and with no new or fresh consideration to support it, would have the undoubted effect, as said in the Milliron case, 180 Cal. 443 [181 Pac. 779], of imposing "a liability necessarily and absolutely inconsistent with the unequivocal intent of the parties as disclosed by the express terms of the bond itself." To so hold would extend beyond all reasonable bounds the doctrine just discussed and would render a bondsman liable to having obligations, unthought of at the time he signed, legislated into his contract without his consent. Brandt in his work on Suretyship and Guaranty, 3d edition, at section 666, sums the matter up in the language used by Baron Pollock in the case of *The Mayor, etc.*, v. *Oswald*, 3 El. & Bl. 665 [118 Eng. Reprint, 1286,

1296], as follows: "Every contract (which does not expressly provide to the contrary) must be considered as made with reference to the existing state of the law; and, if, by the intervention of the Legislature, a change is made in the law, which in any degree affects the contract, such contract made without some clear and distinct reference to the prospect or possibility of a change, does not hold, with reference to the state of things as altered by the new law."

If, upon the adoption of the 1925 amendment, the commissioner had revoked the broker's certificate (on the ground that no new bond had been filed) it is perfectly clear, we think, that he could not have been compelled by mandate or otherwise to reinstate it upon the bond, in the form now before the court, drawn under the old law. Moreover, the appellant as well as the brokers and their surety, was chargeable with knowledge of the change in the law, and it cannot be that in his dealings with the brokers appellant could have placed any reliance upon the protection of the bond as originally drawn without any new writing showing an intention to become bound under the terms of the amendment. We see no element of estoppel in the case.

As already stated, it is not necessary for us to comment on the effect of the new language. If, however, appellant's losses were within its purview, we are of the opinion that the bond sued upon, given pursuant to the old statute, and with the old but not the new statutory language a part of it, is not broad enough and was not intended to cover such losses. In our opinion the action of the trial court in sustaining the demurrer was correct and its judgment should be affirmed.

Judgment affirmed.

Koford, P. J., and Nourse, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 1, 1929, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 1, 1929.

All the Justices present concurred.