[Civ. No. 6581. First Appellate District, Division Two.—June 8, 1929.]

EMIL HOGBERG, Appellant, v. P. E. LANDFIELD et al., Respondents.

Everette C. McKeage for Appellant.

John Ralph Wilson for Respondents.

NOURSE, J.—Plaintiff sued to rescind two separate contracts for the sale of shares of corporate stock. A separate judgment was asked against the defendant Maryland Casualty Company as the surety upon Landfield's bond as a stock broker. Each contract was pleaded in a separate cause of action. Judgment went for plaintiff and against defendant Landfield on the first cause of action only, in favor of the surety company on both causes, and in favor of Landfield on the second cause. The plaintiff has appealed from the portions of the judgment denying him relief on his second cause of action and denying any relief against the surety company. The appeal is presented on typewritten transcripts.

On August 15, 1924, plaintiff paid Landfield $2,650 under the first contract for shares of stock of the New Dominion Copper Company, and on October 24, 1924, paid him $960 for additional shares in the same company. Both sales were made by Landfield while acting as a duly licensed stock broker, and both sales were accomplished through the false and fraudulent representations of Landfield. The bond of the surety company was given under the terms of sections 5 and 6 of the Corporate Securities Act and was in full force during the time when the acts complained of were done.

■ The trial court found that all the representations pleaded in the complaint were made by Landfield, that they were false, that said defendant knew them to be false, that he made the representations for the purpose of inducing plaintiff to enter into the contracts, that he knew plaintiff believed and relied on said representations, and that plaintiff did so rely to his injury. It was also found that the stock was practically worthless and that, within due time, plaintiff gave notice of rescission of both contracts on the grounds of fraud and failure of consideration. Upon these findings the trial court made the conclusion of law that plaintiff was not justified in relying upon these representations when the second contract was made and recited in the judgment that this second contract had not been rescinded.

This recital is directly contrary to the finding that notice of election to rescind in due form was given. When such notice is served the rescission is complete and the court should so find. (*American Type Founders' Co.* v. *Packer*, 130 Cal. 459 [62 Pac. 744]; *Prewitt* v. *Sunnymead Orchard Co.*, 189 Cal. 723, 732 [209 Pac. 995].)

■ The conclusion that appellant was not justified in relying upon the representations is contrary to the findings of fact and to the settled rule of law that a party is justified in relying upon representations concerning existing facts not within his knowledge or his means of knowledge, but within the knowledge of the party making the representations. For these reasons this part of the judgment must be reversed.

■ Appellant's right to recover from the surety company on its bond depends upon the construction of the Corporate Securities Act as amended in 1923 (Stats. 1923, p. 90), which, as a prerequisite to a broker's license required a bond in the sum of $5,000 "conditioned upon the faithful compliance with the provisions of law." In construing these provisions of the act the court, in *Blumenthal* v. *Larson*, 79 Cal. App. 726, 730 [248 Pac. 681, 682], said: "While the phrase 'provisions of law' is a very broad and general one, we are of the opinion that it only refers to the provisions of the Corporate Securities Act." In the Blumenthal case two causes of action were pleaded, one an open book account for securities bought and sold by plain-

tiff for the account of the defendant, and the second, a breach of contract for the sale by plaintiff and purchase by defendant of securities for which the defendant had refused to pay. In holding that the bond required by the act did not cover such defaults as those sued for the court drew attention to the fact that no fraud was alleged in the sale of any security good or otherwise, but that the default of the defendant for which the plaintiff sought to hold the surety was nothing more than a breach of substantive law, a matter not covered by the terms of the act. In the course of the opinion it was said: ''The title of the act in question declares it to be one for the regulation and supervision of companies, brokers, and agents, to prevent fraud in the sales of securities, and it provides for the enforcement of the act and punishment for violation of its provisions. The manifest and declared purpose is to prevent fraud in the sale of securities, as the same are defined by section 14 of the statute. This section sets forth the prohibited acts which would constitute fraud, the prevention of which was the purpose of the statute and bond.'' (Page 731.)

In *Mitchell* v. *Smith*, 204 Cal. 197 [267 Pac. 540], the surety was sought to be held upon allegations that the broker had embezzled stock which had been entrusted to him for sale. The court there held that the language of the statute meant that a surety was liable for failure on the part of the broker to comply with the provisions of law set out in the Corporate Securities Act and not on his failure to comply with all the general laws. In *Anthony* v. *Van*, 96 Cal. App. 523 [274 Pac. 563], the plaintiff sought to hold the surety upon a bond given under the same provisions of the act because of the default of the brokers alleged to have been the conversion of securities entrusted to them for sale. We there held, upon the authority of the Mitchell case, that such conversion was not a matter covered by the provisions of the Corporate Securities Act and denied the plaintiff relief. In *Bridges* v. *Price*, 95 Cal. App. 394 [273 Pac. 72], a case arising after the 1925 amendment to the Corporate Securities Act, we held that, because of this amendment, these cases did not control an action based upon a bond executed in accordance with that amendment. It was there said, however, that the

provisions of the 1923 act to the effect that the bonds shall be conditioned "upon the faithful compliance" with the provisions of law likened the case to those of bonds conditioned upon the "faithful performance" of a contract which has always been construed as being breached by any failure of performance in the principal contract, citing *Garrett* v. *Dodson,* (Tex. Civ. App.) 199 S. W. 675, 682; *General Bonding etc. Co.* v. *Hill,* (Tex. Civ. App.) 195 S. W. 873; *Lamson* v. *Maryland Casualty Co.,* 196 Iowa, 1185 [194 N. W. 70]; *Trinity Parish* v. *Aetna Indemnity Co.,* 37 Wash. 515 [79 Pac. 1097]; *Long* v. *American Surety Co.,* 23 N. D. 492 [137 N. W. 41]; *Hensley* v. *School District,* 97 Kan. 56 [154 Pac. 253]. This is the principle which is applicable to the case at hand. The bond was given for the "faithful compliance" with the provisions of the law (interpreted in the cases cited as referring only to the Corporate Securities Act). The title of the Corporate Securities Act clearly discloses the purpose, among others, to prevent fraud in the sale of securities. The right of a party to sue a broker for actual fraud in the sale of securities is clearly recognized by the provisions of the act. Section 14 of the act provides that anyone who fails to comply with any of the provisions of the act is guilty of a misdemeanor. Section 6 of the act provides that the corporation commissioner may revoke a broker's certificate if he shall find that the broker "has violated any provision of this act or had engaged or is about to engage in any fraudulent transaction." The complaint upon which the action is based is that the defendant Landfield, while acting as a duly licensed broker, sold to the plaintiff certain shares of stock for which the plaintiff paid him in cash; that these sales were accomplished through the false and fraudulent representations of Landfield, and that the stock so sold was practically worthless.

The word "broker" is defined in subdivision 9 of section 2 of the act as one "who shall . . . engage . . . in the business of selling, offering for sale, negotiating for the sale of . . . any security." A sale is defined in subdivision 7 of the same section as including, among other things, every contract by which for a pecuniary consideration called a price one transfers property to another. Actual fraud is defined in subdivision 10 of the same section as meaning

the same as that defined in section 1572 of the Civil Code. The Civil Code section covers any acts committed by a party to a contract with intent to deceive another party thereto or to induce him to enter into a contract, such as the suggestion as a fact of that which is not true by one who does not believe it to be true.

This is precisely the case made out by appellants against the broker in the court below. As against the broker the trial court found all the facts constituting actual fraud as here defined and judgment properly went against the broker upon that ground. Section 5 of the Corporate Securities Act provides that the surety on the bond given under the terms of that act shall be liable to any and all persons who may suffer loss by reason of the broker's failure to comply with the act. Manifestly the sale of securities by a licensed broker accomplished through false and fraudulent representations is a noncompliance with the provisions of the Corporate Securities Act. The broker's failure to comply having been plainly put in issue and found by the trial court, judgment should have gone in favor of the plaintiff and against the surety company. A new trial upon the facts is not necessary as the findings fully cover every disputed issue of fact.

The judgment is therefore reversed, with directions to the trial court to enter judgment on the findings in favor of appellant and against the defendant Landfield and the respondent Maryland Casualty Company on both causes of action.

Sturtevant, J., and Koford, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 8, 1929, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 5, 1929.

All the Justices present concurred.