[Civ. No. 7753. First Appellate District, Division One.—April 30, 1932.]

JAMES SMITHSON et al., Appellants, v. LOUIS H. SPARBER et al., Respondents.

Henry Conlin for Appellants.

Monroe Friedman, Howard H. Desky, Hartley F. Peart and Sylvester J. McAtee for Respondents.

THE COURT.—This appeal was taken from a judgment entered when the plaintiffs declined to amend, upon the sustaining of demurrers to their second complaint. The appellants seek a $2,000 judgment against the respondents Sparber and Ward for claimed negligence in the handling of a real estate transaction, and against the respondent Globe Indemnity Company as surety on the real estate broker's bond of Sparber.

The appellants owned property in Oakland, and Sylvester Bowen and Ida Bowen owned property in Kings County, California. Sparber was a licensed real estate broker in Oakland and Ward a licensed real estate salesman in his employ. On March 25, 1926, a contract was made whereby Sparber and Ward agreed to act as appellants' agents to accomplish an exchange of the appellants' Oakland property for the Bowens' Kings County property, such exchange to be effected upon it being ascertained by the agents "that the title of said [Kings County] land would . . . be free and clear of all liens and encumbrances". The agents also agreed to have a search made by an Oakland title company and that if the search disclosed the title to be free and clear, then, at the time of conveyance, a policy of title insurance for $2,000 was to be procured by the agents insuring the Kings County property in appellants' favor "against all liens and encumbrances subsisting thereon at the time of such conveyance". As compensation for their services, ap-

pellants agreed that Sparber and Ward should each have a one-sixteenth interest in the Kings County property. On April 2, 1926, Sparber and Ward told appellants that the title company had found clear title vested in the Bowens and that the title company would issue its policy accordingly. On the same day appellants executed a written transfer of their Oakland property to the Bowens and delivered it to Sparber and Ward to be escrowed with the title company, and about the same time they delivered possession of the Oakland property to the Bowens. On July 2, 1926, the Bowens executed their deed of the Kings County property, conveying a seven-eighths interest to appellants and a one-sixteenth each to Sparber and Ward, which deed was by Sparber and Ward recorded in Kings County on July 8, 1926, and the escrow dissolved. The title company then delivered to Sparber and Ward its policy showing the title vested in the new owners in the proportions mentioned, *but not free and clear,* for it showed, among other things, an attachment issued out of the Justice's Court of Oakland Township in an action filed on March 29, 1926, wherein one Drinkhouse sued the Bowens for $299. On September 6, 1926, judgment was rendered in that action for $326.30 against the Bowens and execution was issued and levied against the Kings County land theretofore attached. In due time a sheriff's sale was held at which the property was bid in by said Drinkhouse and the certificate of sale recorded on November 28, 1927. A year later the sheriff's deed was delivered to Drinkhouse and recorded. The delivery of the title policy, showing the attachment lien, to Sparber and Ward and their possession of the policy was without the appellants' knowledge, and they knew nothing of its contents until almost a year after title had passed out of them and had vested in Drinkhouse under the sheriff's deed. They learned what had happened only when attempting to pay their taxes on the land and found them to be assessed to Drinkhouse. Appellants had paid all charges of the title company for the examination of title, for the escrow and for the premium and "were upon the issuance and delivery of said policy as aforesaid entitled to the immediate possession thereof from said defendants Sparber and Ward".

The foregoing is a statement of the essential and material facts pleaded. Other facts, it is true, are pleaded and some

conclusions of law as well, but they are not material. From this summary it will be seen that the action is based simply upon the claimed negligence of the broker, Sparber, and his employee, Ward, in failing to disclose to the appellants the important fact that the land they had acquired, supposedly free and clear, was not so, but was, on the contrary, subject to an attachment lien which might and indeed *did* crystallize into an execution, followed by a sheriff's sale, and the consequent loss to them of the property. There can be no doubt that this is the theory and gist of the action and the appellants in urging a reversal stand upon their complaint, claiming that it states a case against the respondent Sparber for his own negligence as well as that of his salesman and employee Ward, and against the surety on Sparber's bond because of the negligence of its principal, both on account of his own acts and those of his employee, attributable to him under settled principles of agency; further that it states a case against Ward as a joint tort-feasor.

The principal point urged by the respondent indemnity company is that its obligation as surety is only upon Sparber's bond as broker, and that it is under no obligation by reason of "any act, conduct, negligence or omission of the defendant Ward, who was a real estate salesman employed by the broker, Sparber". In other words, it is claimed that Ward's acts or omissions as Sparber's employee are not Sparber's acts or omissions within its bond. In support of this position it is pointed out that the statute as it read at the time in question was "conditioned for the faithful performance by such broker of any undertaking as a licensed real estate broker under this act" and that in 1929 it was amended to read "conditioned for the honest and faithful performance by such broker *and his salesmen and employees* of any undertaking as a licensed real estate broker *or salesman or employee of said broker*", etc. (Italics ours.) "It is thus plainly apparent", say counsel for the indemnity company, "that the legislature in the act of 1929 for the first time made the bond of the real estate broker answerable for the conduct or negligence of the salesman employed by the broker, and consequently by necessary inference, prior to that time the bond did not cover any failure of a saleman to perform his duties". As we view it, this does not follow. It is not necessarily to be inferred that be-

cause the legislature saw fit for some reason,—perhaps out of an abundance of caution,—to add more comprehensive and inclusive language to what, as we view it, was clear enough, that the very addition of that language indicates that the statute could have meant nothing of the kind before. There are, of course, cases where this argument would be perfectly valid. For instance, if the courts had read a given provision in a statute in a limited and restricted sense, or had, at least, cast some doubt upon the scope or breadth of its meaning or effect, and the legislature had then changed the statutory language, there could be but little question that the change was made purposely to remove all doubt. But this is not such a case. No decision is called to our attention questioning, for a moment, that the word "broker", as used in the early legislation, was inclusive of anyone through whom the broker worked or operated or acted. Is the inquiry not really and simply this: Did or did not the statute, as it read when Sparber and Ward contracted with appellants, include agents, servants and employees of the "broker" when it spoke, throughout, of the "broker"? Could it have been the legislative intent that the broker's surety should not be held for an act or omission of the broker's cashier, clerk or stenographer, when the same act if done by the broker with his own hands would have held the surety beyond any question? Such a meaning, if given to the statute, would be extremely narrow and quite out of keeping with settled principles of the law of agency. And the mere fact that Ward, the employee, might have had a bond up on behalf of himself makes no difference. The appellants seek to fasten liability upon the indemnity company only under Sparber's bond, upon the theory, of course, that Sparber was Ward's principal and answerable for Ward's negligence as well as for his own. We are satisfied, as already indicated, that the bond as it read at the time in question was broad enough to hold the broker not only for his own acts but for those of any and every person acting for or under him, pursuant to his orders or directions either as employee or otherwise, so long as an agency relation could be established. The complaint clearly alleges such relation.

In the case of *Dodge* v. *National Surety Co.*, 110 Cal. App. 618, 620 [294 Pac. 74], the precise point was passed upon. There it was said: "It is argued that the Surety Company

cannot be held liable for fraudulent acts of the brokers' employees because the bond ran to the brokers alone. The point is without merit. The bond is a 'faithful performance' bond. (*Bridges* v. *Price*, 95 Cal. App. 394 [273 Pac. 72]; *Hogberg* v. *Landfield*, 99 Cal. App. 360 [278 Pac. 907].) The bond was conditioned that the brokers would 'faithfully perform every undertaking entered into by (them) as a licensed real estate broker under said act'. The complaint alleged, and the trial court found, that the acts complained of were done by Hughes as agent for and within the scope of his employment by the brokers. The liability of the principal for the acts of his agent in the scope of the employment is fixed by section 2330 of the Civil Code and other authority does not need to be cited. The surety having undertaken to insure the faithful performance of the brokers' duties under the act the bond included the acts of the brokers' agents who were employed, and licensed under the same act, to perform those duties.''

Here, of course, there is no finding with respect to the acts of the agent, Ward, or as to the scope of his employment, but the allegations of the complaint (with which, alone, we are concerned) are ample in this behalf. It is argued by the respondents that this case is not authority *contra* to their position, for the reason that it does not appear that the 1929 amendment of section 9a of the act was called to the attention of the court. Presumably, of course, the court was mindful of the amendment but, whether or no, we cannot see how any other conclusion could have been reached. The act contains intrinsic evidence which militates against the respondents' position. As it read at the time in question, section 2 defined a real estate broker to be a ''person, copartnership or corporation'', etc. Obviously a corporation can act in such matters only by and through its officers *and employees*. By the same section, a salesman is defined ''as one who for a compensation is employed by a licensed broker'', which shows that the law contemplated a broker acting through a salesman as well as by himself. The act, adopted originally in 1919 (Stats. 1919, p. 1252), has been amended at each succeeding session of the legislature. (Stats. 1921, p. 1294; 1923, p. 93; 1925, p. 600; 1927, pp. 481, 580, 677, 900; 1929, p. 223; and 1931, p. 1294.) The 1929 session, however, saw numerous and comprehensive

changes made, fourteen sections (including 9a) having been amended and four sections (9b, 9c, 9d and 23) added. It was by the 1929 amendment that section 9a was enlarged. It is interesting to note, however, that while the legislature enlarged the bond provision by including the broker's "salesmen and employees" in section 9a, still, when they added 9c, dealing with the release of the surety, they speak of "future acts or defaults *of such broker*" and not (as in 9a) of "such broker and his salesmen and employees", apparently deeming the word "broker" sufficient,—as we deem it sufficient,—to include the broker's salesmen and employees as well without express mention. In view of the numerous provisions throughout the act, as it has always read, touching upon the salesman as an employee of the broker and in view of the fact that a corporation has always been included in the statutory definition of broker, it is difficult to see how a surety could write a broker's bond in 1926 and before the 1929 amendment without assuming, and knowing that it assumed, responsibility in case of negligence of employees and agents of its principal, whether such principal was a corporation with a broker's license or a copartnership or, as in this case, an individual.

In addition to the general ground, the indemnity company demurred upon the ground of misjoinder of parties in that it was joined with both Sparber and Ward upon a bond whereon Sparber alone was principal; also, for substantially the same reasons, that two causes of action were not separately stated. From what has been said it is apparent that we fail to see how the appellants' case could have been stated against all three defendants otherwise than in one count. The surety's liability, if any, arises only from its principal's negligence and if more than one count were to be employed in stating the cause of action it would result in mere repetition. Several grounds of ambiguity are specified, the claim being that it cannot be ascertained whether the action is brought upon the negligence of Sparber or of Ward. What has been already said herein expresses our views with respect to this. There are also specifications of ambiguity raising the question whether fraud is relied upon, which will be dealt with later.

The demurrer of the respondents Sparber and Ward presents the specifications of misjoinder and failure to state

separately two causes of action already touched upon and the same specifications are found upon the question of fraud. It is pointed out that it does not appear that certain statements and representations alleged in the complaint to have been made were false and fraudulent and known by Sparber and Ward to be false and fraudulent; or of what the "fraud" consisted; or how the appellants were damaged; or of what the negligence consisted. It must be conceded that the pleader, in setting forth his cause of action,—doubtless in an attempt to tell the whole story,—descended into unnecessary detail. This is especially true with respect to his statement of the principal acts of the parties. Instead of merely alleging the ultimate facts the pleader has injected allegations of statements and representations, made during the negotiations, of a purely preliminary character which really add nothing to the statement of the case itself. This, however, does not warrant an attack upon the complaint upon the ground that while it alleges negligence it *might* also allege fraud if other allegations were added. A reading of the complaint from beginning to end indicates, as we have already said, a claimed case of negligence and nothing more. Whatever words are found in the pleading (such, for instance, as "carelessly, negligently, wilfully, wrongfully, and in fraud of the rights of these plaintiffs") going to state the pleader's conclusions, may be disregarded. A motion to strike out would be the proper way to seek their elimination and such motion, indeed, was made but not acted upon. We have no way of telling precisely to what parts of the complaint the motion to strike was directed. Presumably if it had been granted some of the surplusage would have been removed.

For the reasons herein stated the judgment should be reversed with instructions to the trial court to overrule both demurrers, and it is so ordered.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 28, 1932, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 28, 1932.