[Civ. No. 9473.   First Appellate District, Division One.—June 25, 1935.]

J. W. BURDETTE et al., Respondents, v. MARYLAND CASUALTY COMPANY (a Corporation), Appellant.

John Ralph Wilson for Appellant.

Jacobs, Blanckenburg & May and Thomas C. Nelson for Respondents.

THE COURT.—This is an appeal by the defendant from a judgment in favor of the plaintiffs in an action brought upon a statutory bond executed by defendant under the Corporate Securities Act covering Paul E. Williams Company, of Washington, during the year 1930.    The contention of the appellant is that the evidence is not sufficient to support the judgment in favor of the respondents.

The evidence shows that Paul E. Williams Company, a Washington corporation, was doing business in California in 1930; and defendant, Maryland Casualty Company, on March 4, 1930, executed a bond in its behalf in compliance with the California Corporate Securities Act, the bond covering the balance of the calendar year 1930, and terminating December

31, 1930. It was conditioned that the principal should strictly comply with the provisions of the Corporate Securities Act and should "honestly and faithfully apply all funds received and faithfully and honestly perform all obligations and undertakings in the purchase or sale of securities by said broker, his agents and employees; and further shall pay all damages suffered by any person damaged or defrauded by reason of the violation of any of the provisions of said Act, and acts amendatory thereof and supplemental thereto, now and hereafter enacted".

The evidence further shows that Paul E. Williams Company, a Washington corporation, was engaged in a brokerage business in San Francisco, and in August, 1930, made written contracts with the respondents to purchase securities for the account of respondents, payable part in cash and the balance in installments, the securities to be held as collateral for the balance of the purchase price; that the Paul E. Williams Company was not a member of the stock exchange, and carried marginal accounts in its own name with stock exchange members. There was no segregation of its customers' accounts in its dealings with stock exchange members. The evidence shows that the respondent J. W. Burdette entered into a written contract at San Francisco, California, with Paul E. Williams Company, a Washington corporation, August 6, 1930, for the purchase of certain securities by the Paul E. Williams Company, payable part in cash and the balance in twenty equal monthly installments thereafter. Under the terms of the contract J. W. Burdette paid to Paul E. Williams Company, a corporation, the sum of $2,052.58 in cash. The evidence further shows that respondent Agnes Beattie made a written contract at San Francisco, California, with Paul E. Williams Company, a Washington corporation, on August 7, 1930, and another on August 14, 1930, under the terms of which contracts said plaintiff Agnes Beattie delivered to the Paul E. Williams Company certain securities for resale, the proceeds to be applied on the account of the purchase of securities as set forth in the aforesaid contracts. The Paul E. Williams Company thereafter sold these securities for $3,295.77 and credited her account with this amount. Thereafter Paul E. Williams Company advised the respondents that the purchases of securities had been made as agreed.

The contracts of purchase, among other things, provided: " . . . that the securities and collateral, if any, may be pledged by the broker, either separately or together with other securities or property, without reference to the specific amount at any time owing by the customer, and that the broker need not return the identical securities, securities of like kind being sufficient."

The evidence also shows that the securities purchased, together with securities of other customers, were carried with a member of the stock exchange on margin account. There was at no time a segregation or distinction as to the securities of any individual customer, the account of such broker with the Paul E. Williams Company indicating only the number of shares of each particular stock carried in such margin account. It was therefore impossible at any time to segregate or identify the stock purchased for the account of these individual customers. Shortly after the purchase of the stock called for by the contracts of the respondents with Paul E. Williams Company, the Paul E. Williams Company, a Washington corporation, transferred its business, property, assets and good will in California to a California corporation known as the Paul E. Williams Company of California. The Paul E. Williams Company, a Washington corporation, continued its business in California as heretofore in its office at 485 California Street, San Francisco, and the California corporation used the same office. The employees of both companies were the same; a joint auditor and bookkeeper had charge of the books and records of both companies. An Oregon corporation of the same name was organized some time in the year 1931. This company also had headquarters at the same office in San Francisco and used the same employees to keep its books and do its work. Both respondents testified that they had no information from this Paul E. Williams Company, a Washington corporation, or otherwise, of any transfer of the assets of the Washington corporation to the California corporation, nor were they advised of any act or change in the affairs of Paul E. Williams Company, a Washington corporation, nor did they consent thereto. It was only some time subsequent to April 15, 1931, following the financial crash and bankruptcies of both said Paul E. Williams companies, that they received notice.

The testimony of a special agent of the United States Bureau of Investigation of the Department of Justice, who had previously spent twelve months investigating the various Paul E. Williams companies, was in substance that on December 31, 1929, the Washington corporation was short 21,672 shares having a value of $582,343.95; as of June 30, 1930, the Washington corporation was short 49,647 shares having a value of $1,419,745.36; as of October 13, 1930, the Washington corporation was short 74,940 shares having a value of $1,435,749.22; as of December 31, 1930, the Washington corporation was short 59,771 shares having a value of $897,993.65; as of December 31, 1930, the approximate combined shortage was $1,180,803. This evidence was undisputed, the appellant having offered no evidence to the contrary, nor in fact any testimony whatever.

The case of *Bridges* v. *Price*, 95 Cal. App. 394 [273 Pac. 72], distinguishes between the Corporate Securities Act as originally enacted, and as amended in 1925. The following excerpt from the opinion not only differentiates as to the liability now existing under the provisions of the act, but prior to the amendment referred to, and also emphasizes the strict enforcement of the penalty for breach of its provisions. At page 398 of the opinion, the court says: ''Paragraph 3 of section 5 of the Corporate Securities Act provided, before its amendment in 1925, that 'said bond shall be conditioned upon the faithful compliance with the provisions of law by said applicant and by all agents representing the said applicant'. This language was construed in *Blumenthal* v. *Larson*, (79 Cal. App. 726 [251 Pac. 241]), *supra*, and *Mitchell* v. *Smith*, (204 Cal. 197 [267 Pac. 540]), *supra*, to limit the liability on the bond to cases where the broker was guilty of fraud in the sale of securities as defined by section 14 of the act. The 1925 amendment added to the language above quoted the following: 'and the honest and faithful application of all funds received and the faithful and honest performance of all obligations and undertakings in the purchase and sale of securities'. The purpose and effect of this amendment was obviously to extend the liability upon such bonds beyond that which was imposed by the statute before the amendment. Whatever may be meant by the word 'honest' the 'faithful performance of all obligations and undertakings' means no

more than performance of those obligations and undertakings according to their terms. Bonds conditioned for the 'faithful performance' of a contract have always been construed as being breached by any failure of performance in the principal contract. (*Garrett* v. *Dodson,* (Tex. Civ. App.) 199 S. W. 675, 682; *General Bonding etc. Co.* v. *Hill,* (Tex. Civ. App.) 195 S. W. 873.''

The evidence further shows that the Paul E. Williams Company, a Washington corporation, had consistently engaged in a program of defalcations commencing a long time prior to its transactions with these respondents. Its defalcations had reached such magnitude that, prior to August 30, 1930, the company was actually bankrupt, and when it dealt with these respondents it knew of its inability to perform these contracts as well as any other of the contracts previously entered into with other customers. This condition did not improve as time went along but continued to become worse. These acts and methods of the principal, established by the evidence without a conflict, show that the principal did not ''honestly and faithfully apply all funds received and faithfully and honestly perform all obligations and undertakings in the purchase or sale of securities'' as provided for in the bond in controversy. They constitute violations of such bond and entitle the respondents to recover thereunder from the appellant.

Judgment affirmed, and it is so ordered.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 22, 1935.